Rup, J.
This dispute involves the scope of an easement over property owned by the plaintiffs. The plaintiffs brought this action seeking to recover from the defendant for: trespass (Count I), nuisance (Count II), interference with contractual relations (Count III), overburdening the easement (Count IV). assault and battery (Counts V and VI) and infliction of emotional distress (Count VII). They also sought declaratory and injunctive relief (Counts VIII and IX). On his part, the defendant made counterclaims seeking injunctive relief (Count I), declaratory relief (Count II) and damages for negligence, and assault and battery (Count III).
The matter was tried, without jury, on the plaintiffs claims for injunctive and declaration relief and all the defendant’s counterclaims.[1] During trial, the plaintiffs were allowed to amend their complaint to add a claim for extinguishment of an easement by adverse possession.[2]
After trial, based on the credible evidence and reasonable inferences I have drawn therefrom, together with my view taken of the properly, I find and rule as follows.
FINDINGS OF FACT
The plaintiffs, Michael Gentile, Sr. and Margaret Gentile, are married and have owned property on Lake Whittemore (the Lake) in Spencer, Massachusetts for approximately thirty-four years. In 1961, they purchased a parcel of lakefront property with a cabin[3] (Lot #2), with the Lake as its north border and Delude Avenue as its south border. Over the years, the plaintiffs purchased three additional parcels (Lots 1,[4] 9 and 10) and, at the time of trial, owned a total of four.
Mark Gentile (Mark), another of the plaintiffs, is the son of Michael and Margaret Gentile. Mark claims to have rented Lot #2 from his parents who continue to hold title to the property as tenants by the entirety.
When the plaintiffs took title to Lot #2, they did so subject to various easements including one which is the subject of this lawsuit. Specifically, their property is “(s)ubject to a right-of-way twenty (20) feet in width and along the [parcel’s] westerly line ... for bathing purposes for the benefit of Parcel "A" and Parcel “C” and lots numbered 7, 8, 9 and 10 ..."
Lake Whittemore has a beach open to the public and is used for recreational water sports including swimming, boating, canoeing and water skiing. It has no public docks or boat launches. Over the years, the plaintiffs became friendly with some of property owners who had the benefit of the right-of-way and allowed them to use their driveway for access to the Lake. The plaintiffs relationship with other property owners on the Lake has not been as cordial and certain of those property owners fear the plaintiffs and avoid their end of the Lake.
The right-of-way is located along the westerly border of Lot #2. It runs down a slight grade from Delude Avenue to the Lake and, near the shoreline, comes within three feet of the door to the plaintiffs’ cabin. Pursuant to a court order that they survey their property, the plaintiffs have marked the right-of-way with stakes. Despite their contentions to the contrary, the plaintiffs do not mow or keep clear the right-of-way, which becomes overgrown with tall grass and brush during the spring and summer months. Nonetheless, it remains passable.
The defendant, Paul Mahoney purchased Lot #7 in May 1985 from Steven A. Naoum (Naoum). Naoum purchased Lot #7 from Robert and Carol Hokanson (the Hokansons) in February 1984. During the time of their ownership of Lot #7, the Hokansons suffered a stormy relationship with the plaintiffs regarding use of the right-of-way.[5]
Lot #7 had a summer cottage located on it, which the defendant has converted to a year-round home. One of the defendant’s considerations in buying the property was use of the Lake. Shortly after he purchased Lot #7, he walked down the right-of-way to the Lake and encountered the plaintiffs. When he introduced himself and inquired as to the location of the right-of-way, he was met with hostility and a response of “you can’t come down here.” The defendant tried to appease the plaintiffs by assuring them he would not cause problems as he understood his predecessors had.
During the summers of 1986 and 1987, the defendant made use of the right-of-way without problems. He primarily used the right-of-way when the defendants were not present. He and his former wife used it to swim, to take walks along the Lake shore and to *166 walk their dog. On occasion, they carried a canoe or a boat down the right-of-way to put it in the Lake.
Over[1] time difficulties developed as the plaintiffs disputed the defendant’s use of the right-of-way. At different times, the plaintiffs parked cars and a boat on the right-of-way. On several occasions, the plaintiffs or their family members physically blocked the defendant’s use of the way. As the hostility escalated, the parties came to hurling objects and epithets at one another. Further aggravating the situation, the defendant would come to use the right-of-way armed with cameras or tape recording devices to record the plaintiffs’ conduct.
At one point, in an effort to settle his dispute with the plaintiffs, the defendant suggested forming an association of the property owners who had a right to the easement and suggested use of the right-of-way be limited to daytime hours. He offered to build a barbecue pit and picnic area at the bottom of the easement and to keep the area clean. His suggestions did not evoke a favorable response from the plaintiffs.
At another time, the defendant took it upon himself to clear some of the brush and mow the tall grass from the right-of-way, in order to make it more passable.
I do not find credible the plaintiffs’ contention that they intentionally planted and cultivated blueberry bushes and allowed trees to grow on half of the easement as an act hostile to those who had the benefit of the easement in order to extinguish that portion of the easement.
RULINGS OF LAW
I. Scope of the Easement
The parties dispute the extent to which the defendant may use the right-of-way. The plaintiffs contend he may use it only as access to the Lake in order to wade or swim in the water. They agree he may cany inner tubes or floating devices to the water as swimming aids. The defendant maintains the easement also encompasses access to the Lake for his canoe or sail boat.
The scope of an easement granted in general terms is determined by the language of the grant construed in light of the attending circumstances. See Mugar v. Massachusetts Bay Transportation Authority, 28 Mass.App.Ct. 443, 444 (1990); Pion v. Dwight, 11 Mass. 406, 411 (1981). Here, the easement granted to the defendant is limited in scope by its unambiguous terms: “for bathing purposes." See Brodeur v. Lamb, 22 Mass.App.Ct. 502, 504 (1986). As commonly understood and used, the word “bathe” means “ 1: to take a bath 2: to go swimming” 3: to become immersed or absorbed" Webster’s Ninth New Collegiate Dictionary, 135 (1986). It does not include canoeing or boating.
Creation of an easement includes by implication every right necessary for its enjoyment. Sullivan v. Donohue, 287 Mass. 265, 267 (1934). The holder of an easement normally has a duty to maintain the easement in a condition as may be necessary to its use. Shapiro v. Burton, 23 Mass.App.Ct. 327, 333 (1987). The defendant acted reasonably in clearing brush and mowing tall grass when necessary to his use and enjoyment of the right-of-way. See Glenn v. Poole, 12 Mass.App.Ct. 292, 296 (1981).
II. Adverse Possession
To extinguish a portion of the easement by adverse possession, the plaintiffs must establish they used the right-of-way for a period of over twenty years in a manner inconsistent with the defendant’s easement. Lemieux v. Rex Leather Finishing Corp., 7 Mass.App.Ct. 417, 422 (1979). The plaintiffs’ neglect of much of that portion of their property dedicated to the easement is not so irreconcilable with the rights of the easement holders as to be deemed adverse. See New England Home for Deaf Mutes v. Leader Filling Stations Corp., 276 Mass. 153, 158 (1931). And, the fact that the defendant and other easement holders may not have used the entire width of the right-of-way does not conclusively impair or defeat that part of the easement. Willets v. Langhaar, 212 Mass. 573, 575(1912). The plaintiffs have not met their burden of proving adverse use of the westerly half of the right-of-way.
ORDER OF JUDGMENT
For the reasons stated above, it is ORDERED that judgment shall enter declaring that the easement granted to the defendant Paul Mahoney is limited to his use of the right-of-way for access to Lake Whittemore for the purposes of swimming, wading and bathing.
It is further ORDERED that a permanent injunction shall issue restraining the defendant Paul Mahoney from: 1.) using the right-of-way for any purpose other than as access to Lake Whittemore for purposes of swimming, wading and bathing; 2.) transporting any boat, canoe, water craft or other vehicle over the right-of-way; and 3.) launching any boat, canoe, water craft or other vehicle into Lake Whittemore from the right-of-way.
It is also ORDERED that a permanent injunction shall issue restraining the plaintiffs from blocking, barring or interfering with the defendant Paul Mahoney’s use of and access to the right-of-way.

On the second day of trial, the parties indicated they were proceeding only on the claims and counterclaims for injunc-tive and declaratory relief and would voluntarily dismiss all other claims and counterclaims.

The issue having been raised during- trial, I allowed amendment in the interest of resolving all matters relating to this dispute and so the complaint would conform to the evidence. Mass. R. Civ. P. 15(b). I granted the defendant additional time to present evidence bn the issue. Id.

The cabin is a former trolley car converted to use as a cabin.

Lot #1 is adjacent to Lot #2.

Prior to the plaintiffs’ purchase of Lot # 1, the Hokansons had apparently docked their boat and fished from that lot. The plaintiffs purchased Lot #1, in part, to prevent the Hokansons from using it.