# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FOR PUBLICATION

**Filed:** October 27, 1997

| | | |
|---|---|---|
| KELLY CARR, | ) | United States District Court |
| | ) | Middle District of Tennessee |
| PLAINTIFF/RESPONDENT, | ) | Nashville Division |
| | ) | No. 3-94-0095 |
| v. | ) | |
| | ) | Hon. Robert L. Echols |
| UNITED PARCEL SERVICE, ET AL., | ) | United States District Judge |
| | ) | |
| DEFENDANT/PETITIONERS. | ) | No. 01S01-9605-FD-00090 |

FILED

October 27, 1997

Cecil W. Crowson
Appellate Court Clerk

FOR PLAINTIFF:
Deanna C. Bell
Nashville

FOR DEFENDANTS:
Charles Hampton White
Rebecca Wells Demaree
Nashville

FOR AMICUS CURIAE,
TENNESSEE MUNICIPAL
LEAGUE RISK MANAGEMENT,
ET AL.:
Pamela Lynn Reeves
Knoxville

FOR AMICUS CURIAE,
JOYCE M. GRIMES:
Joyce M. Grimes
Nashville

HOLDER, J.

## OPINION

This case comes to us on a certified question of law. The plaintiff, Kelly Carr, filed a sexual harassment action in the United States District Court for the Middle District of Tennessee alleging violations of both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Tennessee Human Rights Act ("THRA"). She named as defendants her employer, United Parcel Service ("UPS"), and three UPS employees, Ron Foster, Martin Sisk, and Andrew Martin. Foster, Sisk, and Martin filed a motion for judgment on the pleadings arguing that they could not be held individually liable under either Title VII or the THRA. The district court entered an order requesting this Court "to resolve the issue of whether a defendant can be held individually liable under THRA." We accepted certification of the question. We hold that, under the facts as certified to us, the THRA does not impose individual liability in this case.

## BACKGROUND

Plaintiff alleges that she was physically and verbally sexually harassed by Foster during her employment with UPS. Plaintiff maintains that on or about January 29, 1993, Foster rubbed her posterior and stated "I just rubbed Kelly's ass. I hope she does not file harassment charges." Plaintiff contends that Sisk, a supervisor, witnessed the January incident and failed to take remedial action. Plaintiff apparently alleges several other instances of sexually offensive conduct involving the defendants either directly or indirectly. The allegations are not specified in the record.[1] The record before us is also devoid of specific allegations of sexual harassment against Martin.

---

[1]The record in this case consists only of the Order Certifying Question to the Supreme Court of Tennessee.

## EMPLOYMENT-RELATED DISCRIMINATION

The THRA is a comprehensive anti-discrimination statute that is codified at Tenn. Code Ann. § 4-21-101 to -905 (Repl. 1991 & Supp. 1996). Tennessee Code Annotated § 4-21-401 prohibits employment-related discrimination and provides in pertinent part:

> It is a discriminatory practice for an employer to:
>
> (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed color, religion, sex, age or national origin;

Tenn. Code Ann. 4-21-401(a). The THRA defines "employer" to include:

> . . . the state, or any political or civil subdivision thereof, and persons employing eight (8) or more persons within the state, or any person acting as an agent of an employer, directly or indirectly;

Tenn. Code Ann. § 4-21-102(4) (Supp. 1996). Our initial inquiry is whether the legislature intended to impose individual liability by defining employer to include "any person acting as an agent of an employer."

Although the language of Title VII and the THRA differ slightly, it is clear that the legislature intended the THRA to be coextensive with federal law. Bennett v. Steiner-Liff Iron and Metal Co., 826 S.W.2d 119, 121 (Tenn. 1992) (citing Tenn. Code Ann. § 4-21-101(a)(1) (1991 Repl.) (stating purpose and intent of general assembly was to "provide for execution of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972, . . .")). We, therefore, may look to federal interpretation of Title VII for guidance in enforcing our own anti-discrimination statute. We, however, are neither bound by nor limited by federal law when interpreting the THRA.

3

Title VII defines employer as including "any agent" of the employer. The majority of the federal circuits addressing this issue have held that the "any agent" provision incorporates respondeat superior liability[2] and does not impose individual liability. Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996); Tomka v. Seiler Corp., 66 F.3d 1295, 1312 (2d Cir. 1995); Greenlaw v. Garrett, 59 F.3d 994, 1001 (9th Cir. 1995), cert. denied, 117 S.Ct. 110, 136 L.Ed.2d 63 (1996); Gary v. Long, 59 F.3d 1391, 1400 (D.C. Cir. 1995); EEOC v. AIC Security Investigations, 55 F.3d 1276, 1281 (7th Cir. 1995); Lenhardt v. Basic Inst. of Tech., 55 F.3d 377, 381 (8th Cir. 1995); Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir. 1994); Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587 (9th Cir. 1993); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (per curiam). These circuits have reasoned that individual liability is inconsistent with Title VII's original remedy provision and its exemption for small businesses.

The THRA's definition of employer is ambiguous and susceptible to two reasonable interpretations. Plaintiff urges that every supervisor is an "employer" for purposes of the THRA. Under this construction, supervisors may be held individually liable for violations of the THRA. A second construction is that an

---

[2]We note that the federal courts' use of the term respondeat superior has created considerable confusion. As discussed later in this opinion, derivative liability principles are applicable only in quid pro quo harassment cases. The federal courts, however, have held that the "any agent" provision created respondeat superior liability. Accordingly, the federal courts have continued to incorrectly employ the term respondeat superior as an element in hostile work environment cases where the liability is actually based on negligence. See Fleenor v. Hewitt Soap Co., 81 F.3d 48, 50 (6th Cir. 1996) (noting term respondeat superior "is an incorrect label for co-worker harassment cases"). The federal courts have recognized this fallacy and redefined the term respondeat superior for purposes of Title VII analysis. To establish respondeat superior in hostile work environment cases "the plaintiff must prove 'that the employer, through its agents or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'" Kauffman v. Allied Signal, Inc., 970 F.2d 178, 183 (6th Cir. 1992).

employer is vicariously liable for its supervisory employees' quid pro quo violations of the THRA.

We find the vicarious liability construction more compelling for the following reasons: (1) the construction is consistent with the THRA's exemption for small businesses; (2) agents are generally not individually liable for acts undertaken on behalf of a disclosed principal that are within the legitimate scope of the delegated management authority;[3] and (3) the construction is consistent with the federal courts' interpretation of Title VII. The slight deviation of the THRA's definition of employer from Title VII's definition does not warrant an interpretation that would be inconsistent with Title VII. We agree with the federal courts' analyses and hold that the THRA's "agent of an employer" language does not impose individual liability.

Our inquiry, however, does not end with this conclusion as the THRA is broader than Title VII in terms of who may be held liable for harassment and discrimination. The THRA is applicable to entities employing fewer employees than that required by Title VII. See Tenn. Code Ann. § 4-21-102(4) (defining employer to include persons employing eight or more persons); but see 42 U.S.C. § 2000e(b) (defining employer as person employing fifteen or more employees). Moreover, the THRA provides that:

> [i]t is a discriminatory practice for a person or for two (2) or more persons to:
>    . . .
>
> (2) Aid, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory by this chapter;

---

[3]See generally RESTATEMENT (SECOND) OF TORTS § 320 (1977). See also Janken v. Hughes, 53 Cal. Rptr. 2d 741 (Cal Ct. App. 1996) (holding supervisors exercising properly delegated management authority not individually liable even if decisions were later found to be discriminatory).

Tenn. Code Ann. § 4-21-301(2) (1991 Repl.). A "person" is defined as "one (1) or more individuals, governments, governmental agencies, public authorities, labor organizations, corporations, legal representatives, partnerships, associations, . . unincorporated organizations or other organized persons." Tenn. Code Ann. § 4-21-102(14). Accordingly, we find that an individual who aids, abets, incites, compels, or commands an employer to engage in employment-related discrimination has violated the THRA.

Because Tenn. Code Ann. § 4-21-301(a)(2) creates accomplice liability, we must analyze the elements of accomplice liability to determine how an individual employee might aid and abet an employer in violating the THRA. The THRA does not provide a definition of "aiding and abetting." The common law civil liability theory of aiding and abetting required that:

> the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts.

Cecil v. Hardin, 575 S.W.2d 268, 272 (Tenn. 1978) citing Restatement (Second) of Torts § 876(b) (1965). Accordingly, civil liability for aiding and abetting requires affirmative conduct. Failure to act or mere presence during the commission of a tort is insufficient for tort accomplice liability.

We shall now examine the elements of employer or principal liability for violations of the THRA. There are three general classifications of sexual harassment: (1) hostile work environment created by non-supervisory employees or co-workers; (2) quid pro quo harassment; and (3) hostile work environment created by supervisory employees.

6

# CO-WORKER HARASSMENT

An employer's liability for a hostile work environment created by non-supervisory employees (co-workers) is based on a theory of negligence and not respondeat superior. To prevail on a claim of co-worker harassment, a plaintiff must assert and prove:

> (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a "term, condition or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to respond with prompt and appropriate corrective action.

Spicer v. Beaman Bottling Co., 937 S.W.2d 884, 888 (Tenn. 1996). An employer, therefore, is liable for the conduct of non-supervisory employees only as a by-product of its reaction to the employee's conduct and not as a direct result of the actual conduct. Accordingly, § 4-21-401 liability under a co-worker harassment theory is premised on the employer's reaction and not on the co-worker's harassing conduct.

A non-supervisory employee who engages in discriminatory conduct does not, merely by that conduct, aid and abet the employer's failure to take remedial action. A non-supervisor neither has a role in the employer's reaction nor shares a common intent or purpose with the employer who simply fails to respond to the discriminatory conduct. Permitting suits against non-supervisors for their harassing conduct, under an aiding and abetting theory, also serves little remedial purpose. If an employer responds promptly and appropriately to the harassment, the THRA has not been violated. If the employer fails to take appropriate corrective actions, the employer is liable. Accordingly, § 4-21-401

does not redress a co-worker's harassing conduct.[4]  Section 4-21-401 merely provides a remedy for the employer's failure to take corrective action in a co-worker harassment case.

Individual accomplice liability under a hostile work environment theory requires conduct that is distinct from the harassment.  To impose individual accomplice liability on a non-supervisory employee, a court must find:

(1)  that a hostile work environment existed;

(2)  that the employee acted affirmatively to aid, abet, incite, compel, or command an employer not to take remedial action to the hostile work environment; and

(3)  that the employer engaged in employment-related discrimination by failing to take adequate remedial action.

Although a non-supervisor will rarely possess the ability to prevent an employer from taking remedial action, the non-supervisor should be liable for conduct which encourages or prevents an employer from taking remedial action.

Plaintiff's claims against Foster are predicated on hostile work environment.  There is no evidence in the record before us that Foster had any supervisory authority over the plaintiff or encouraged UPS not to take corrective action.  Under the facts as certified, Foster cannot be held individually liable for aiding and abetting an employer violation of the THRA.

---

[4]A victim's cause of action against individual co-workers for sexually harassing conduct may lie in other tort theories.

8

## SUPERVISOR HARASSMENT

Cases involving co-worker harassment are relatively simple. The more difficult issues arise when the harasser is a supervisor. There are two general classifications of supervisor harassment: (1) the "quid pro quo" theory of sexual harassment; and (2) the hostile work environment created by a supervisor.

### Quid Pro Quo

Quid pro quo harassment occurs when a supervisor conditions employment benefits on "sexual favors." To prevail under a quid pro quo theory, plaintiff must show:

> (1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability.

Kauffman v. Allied Signal, Inc., 970 F.2d 178, 186 (6th Cir. 1992).

The employer is strictly liable for a supervisor's quid pro quo harassment under the doctrine of respondeat superior. Strict liability is imposed based on the theory that: (1) a supervisor is the alter ego of the employer; and (2) a supervisor has the actual or apparent authority to alter an employee's terms or conditions of employment. Under this alter ego theory of liability, the supervisor's acts within the scope of employment are imputed to the employer.

The record as certified provides no allegation that either Martin or Sisk utilized their actual or apparent authority to obtain "sexual favors."[5] We find that the plaintiff's claims against both Martin and Sisk are properly classified as supervisors failing to prevent the misconduct of a subordinate. The mere failure to act, however, does not constitute the giving of "substantial assistance or encouragement." Accordingly, neither Sisk nor Martin can be held individually liable, as aiders and abetters, on the facts presently before us.

Although the facts as certified do not support a finding of quid pro quo harassment, we acknowledge that several state anti-discrimination statutes containing aiding and abetting provisions have been interpreted to impose individual liability on supervisors for quid pro quo harassment.[6] We will reserve discussion of supervisor liability for quid pro quo discrimination under the THRA for a case in which the issue is squarely presented.

Supervisor Created Hostile Work Environment

Supervisor created hostile work environment cases differ from quid pro quo harassment in that the supervisor does not use or attempt to use supervisory authority to obtain sexual favors from an employee. The supervisor

_____

[5]Although not reflected in the record, Ms. Carr's brief does allege that the "defendants" refused to transfer her "so that she could get away from Mr. Foster." The record, however, does not allege that the transfer decisions were continent upon receipt of "sexual favors."

[6] See St. Peter v. Ampak-Division of Gatewood Products, Inc., 484 S.E.2d 481 (W. Va. 1997) (permitting individual liability); Schram v. Albertson's, Inc., 934 P.2d 483 (Or. Ct. App. 1997) (stating supervisors could be individually liable for aiding and abetting employment discrimination under state statute); Tyson v. Cigna Corp., 918 F.Supp 836 (D. N.J. 1996) (finding supervisory employees may be held liable in individual capacity under state statute); Conway v. City of Hartford, 9 N.D.L.R. P 167 (Conn. Super. Ct. 1997); Johnson v. Canadian Pacific Ltd., 522 N.W.2d 386 (Minn. Ct. App. 1994) rev'd on other grounds, 536 N.W.2d 319 (Minn. 1995); Dupus v. Con-test, Inc., 4 Mass. L. Rptr. 165 (Mass. Super. Ct. 1995) (holding members of "upper management" may be liable as aiders and abettors).

10

merely creates a hostile work environment in the same manner as an employee with no supervisory authority. Whether the employer is liable for its supervisor's actions in hostile work environment claims depends on: "(1) whether the supervisor's harassing actions were foreseeable or fell within the scope of employment; and (2) even if they were, whether the employer responded adequately and effectively to negate liability." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 803 (6th Cir. 1994). Accordingly, the employer's liability is predicated on its reaction to the discriminatory conduct.

We hold that, for purposes of deciding accomplice liability, a claim of supervisor created hostile work environment should be subject to the same analysis as a claim of a co-worker harassment. Generally, the supervisor and the employer do not share a community of purpose when the employer fails to respond appropriately to the supervisor's harassing conduct. A supervisor, however, may be individually liable for encouraging or preventing the employer from taking corrective action. Absent such allegations, neither Martin nor Sisk can be held individually liable under a hostile work environment theory.

**CONCLUSION**

Based on the limited facts certified to this Court, we hold that these defendants cannot be held individually liable under the Tennessee Human Rights Act as an employer under Tenn. Code Ann. § 4-21-401 or for aiding and abetting an employer's violation of § 4-21-401.

The clerk will transmit a copy of this opinion in accordance with Tenn. R.

Supr. Ct., Rule 23(8).  The costs in this court will be taxed to the plaintiff.

12

_____
Janice M. Holder, Justice

**Concurring:**

Anderson, C.J.
Drowota, Reid, and Birch, J.J.