TONYA A. PARKER,                  )
                                  )
        Plaintiff/Appellant,      )        Appeal No.
                                  )        01-A-01-9807-CV-00386
v.                                )
                                  )        Montgomery Circuit
CONWOOD COMPANY, L.P.,            )        No. C12-288
                                  )
        Defendant/Appellee.       )
                                  )

FILED

July 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT FOR
MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE


THE HONORABLE JAMES E. WALTON, JUDGE


STEVE R. DARNELL
Bateman, Bateman & Darnell
101 North Third Street
Clarksville, Tennessee  37040
        ATTORNEY FOR PLAINTIFF/APPELLANT


ROGER A. MANESS
114 South Second Street
P. O. Box 1149
Clarksville, Tennessee  37041-1149
        ATTORNEY FOR DEFENDANT/APPELLEE


AFFIRMED AND REMANDED


WILLIAM B. CAIN, JUDGE

OPINION

Appellant Tonya Parker began work for Conwood, L.P., in the Garrett Building of Conwood's facility in Clarksville on or about July 22, 1994. In October of 1996, Ms. Parker filed a formal complaint with Conwood General Foreman Tommy Porter which alleged in essence that Ms. Parker had been the victim of offensive sexual touching at the hands of Samuel Anderson, one of Conwood's employees. This offensive contact had apparently occurred on or about October 7, 1996, in the presence of at least one other coworker and one of her supervisors, Mr. Bruce Beizer. The most direct result of this complaint was a written warning issued to Mr. Anderson, referencing Conwood's sexual harassment policy and threatening termination if his behavior did not improve.

The October 1996 complaint unleashed a flood of insinuations, accusations and innuendo, both stemming from and flowing to Ms. Parker. In response to Ms. Parker's complaint, Mr. Anderson complained that Ms. Parker had offensively touched him. His complaint, in turn launched an investigation which resulted in three suspensions. Mr. Anderson, Ms. Parker, and one Carolyn Parchmann were suspended due to what was characterized by Conwood's Plant Manager and Vice President as "inappropriate horseplay." In the course of this investigation, prior to suspension, and apparently in connection with her first complaint, Ms. Parker brought more instances of inappropriate behavior to Porter's attention, one of which involved offensive contact from one Billy Stuart. These complaints in turn were investigated. It appears from the affidavits in the record that at all times these investigations were conducted under the direction of Conwood's Human Resources Manager Wayne Kirby, the Plant Manager Bryce Sanders, and Lester Groves, Conwood's Vice President.

On October 18, 1996, the decision to suspend was made. On October 23, upon their return from suspension, the previously referenced employees, including Ms. Parker, were advised of Conwood's "zero-tolerance policy" regarding workplace harassment.[1] Ms. Parker was back at work five days before she filed another complaint regarding another incident of hostile treatment at the hands of Billy Stuart. Conwood investigated this complaint on the same day it

---

[1]Although the litigants dispute the length of suspension ordered, the trial court considered, and we agree that this dispute is not material to Appellant's claims of hostile work environment under state law.

was filed, discussing it with all of the alleged witnesses. No one could completely corroborate Ms. Parker's version of the facts. This investigation was conducted by Wayne Kirby and Tommy Porter. On December 19, Ms. Parker became involved in an altercation concerning the use of a tow motor on Conwood's premises. This altercation occurred with yet another employee in front of yet another supervisor. It was on this day that Ms. Parker resigned her position.

Suit was eventually brought in Montgomery County Circuit Court. We note that of the multiple offending entities listed above, Ms. Parker sued only Conwood Company, L.P. In response to Conwood's motion for summary judgment, Ms. Parker filed an affidavit in which she not only recounts the above circumstances, but alleges a litany of sins of alleged discrimination and "cold-shoulder treatment" on the part of Conwood employees dating back to July of 1994.[2]

The trial court rendered summary judgment for Conwood, finding, in pertinent part:

> Without discussing all of the elements the plaintiff must establish to succeed in this case, the Court will focus on the one element which is fatal to the plaintiff's claim on the sexual harassment charge. The fact that sexual harassment occurred is not disputed. However, for the defendant to be liable to the plaintiff, the plaintiff must establish that the defendant knew or should have known that the sexual harassment was going on, but failed to respond with prompt and appropriate action to stop the harassment.

> * * *

> The plaintiff claims that the defendant knew or should have known of the other claimed sexual harassment because certain supervisors observed what happened and what was said. For the defendant to be put on notice that the plaintiff felt she was being sexually harassed, when the plaintiff made no complaint, would require the supervisors to be mind

_____

[2]Appellee would urge this court to disregard Ms. Parker's subsequent affidavit. It is clear and well settled that this court cannot so disregard evidence in the face of Rule 56 of the Tennessee Rules of Civil Procedure. *See Byrd v. Hall*, 845 S.W.2d 208 (Tenn. 1993). Regarding the evidence at trial, the court must take the strongest legitimate view in favor of the nonmovant Parker, to consider if there are any material issues of fact which would prevent the movant Conwood from succeeding.

readers. There is no evidence to establish that the defendant was on notice concerning conduct about which the plaintiff made no complaint. With regard to the three (3) complaints the plaintiff made, it is clear that the defendant responded adequately with prompt and appropriate action.

Therefore, as to the general claim of sexual harassment, the plaintiff has failed to establish a critical element of her claim.

The issues raised by Ms. Parker on appeal are as follows:

I.      Whether the trial court erred in finding that the Defendant was not on notice of the sexually hostile environment of its work place?

II.     Whether the trial court erred in finding no material issue of fact concerning Plaintiff's allegations of retaliatory conduct?

III.    Whether the trial court erred in finding no material issue of fact concerning Plaintiff's allegations of constructive discharge.

## I.  NOTICE

Since no presumption of correctness attaches to the trial court's finding on summary judgment, this court must make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *See Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). Viewing the evidence in the light most favorable to Ms. Parker, we find as the trial court did. Although Ms. Parker argued at trial, as well as on appeal, that notice to her employer Conwood flowed by nature of the alleged first hand knowledge of supervisory personnel at Conwood, the burden of proof for this type of sexual harassment claim is clear in this jurisdiction. The situation related by Ms. Parker's evidence below is one of either coworker-created or supervisor-created hostile work environment. As the trial court recognized, harassment did occur; of this fact there can be no doubt. However, as has been noted throughout this case, Ms Parker is suing her **employer**. In such a situation, she must come forward with the showing described by our supreme court in *Carr v. United Parcel Service.* The opinion, drafted by Justice Holder on behalf of the majority, reads as follows:

### CO-WORKER HARASSMENT
An employer's liability for a **hostile** work environment created by non-supervisory employees (co-workers) is based

on a theory of negligence and not respondeat superior. To prevail on a claim of co-worker harassment, a plaintiff must assert and prove:

> (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a "term, condition or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to respond with prompt and appropriate corrective action.

> *Spicer v. Beaman Bottling Co.,* 937 S.W.2d 884, 888 (Tenn. 1996). An employer, therefore, is liable for the conduct of non-supervisory employees only as a by-product of its reaction to the employee's conduct and not as a direct result of the action conduct. Accordingly, § 4-21-401 liability under a co-worker harassment theory is premised on the employer's reaction and not on the co-worker's harassing conduct.

> * * *

> *Supervisor Created Hostile Work Environment*

> Supervisor created hostile work environment cases differ from quid pro quo harassment in that the supervisor does not use or attempt to use supervisory authority to obtain sexual favors from an employee. The supervisor merely creates a hostile work environment in the same manner as an employee with no supervisory authority. Whether the employer is liable for its supervisor's actions in hostile work environment claims depends on: "(1) whether the supervisor's harassing actions were foreseeable or fell within the scope of employment; and (2) even if they were, whether the employer responded adequately and effectively to negate liability." *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 803 (6th Cir.1994). Accordingly, the employer's liability is predicated on its reaction to the discriminatory conduct.

*Carr v. United Parcel Service*, 955 S.W.2d 832, 836, 838 (Tenn. 1997). In response to Conwood's statement of undisputed facts, number 9 regarding notice to the employer, Ms. Parker asserts the following:

> Plaintiff [Parker] did not need to "complain" to her supervisors, because much of the conduct occurred in the presence of her supervisors, Rodney Turner and Bruce Beizer on a regular basis. Supervisors, Rodney Turner and Bruce Beizer, participated to some extent in the verbal conduct.

If Ms. Parker is attempting to travel on a co-worker harassment theory, mere knowledge of the supervisors will not be imputed to Conwood, especially in light of the ongoing investigation conducted by Conwood employees relative to this alleged conduct. Should Ms. Parker assert that her supervisors created the environment, there is no showing that, again in light of the ongoing investigation conducted by Messrs. Kirby and Porter, Conwood could have foreseen this conduct at the outset. There is no showing that such offensive conduct was within the scope of these coworkers 'or supervisors' employment, and no showing that the employer did anything but investigate the claims and discipline those responsible.[3]

Since Ms. Parker failed in satisfying her burden with respect to the action filed, summary judgment was proper.

## II. RETALIATORY CONDUCT

Ms. Parker argues that the record shows retaliatory conduct on the part of the defendant Conwood, against her for filing a sexual harassment complaint. Inasmuch as her theory in this respect echoes the problems listed regarding notice, this court must affirm the trial court's finding. There is no showing that Conwood knew or should have known of any cold-shoulder treatment without a complaint, and no showing that once a complaint was made, Conwood made inadequate or inappropriate response. *See Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 31-32 (Tenn. 1996).

## III. CONSTRUCTIVE DISCHARGE

As the trial court correctly pointed out in its memorandum opinion, "notice" is Ms. Parker's watchword. Ms. Parker claims that Conwood constructively discharged her from its facility. To succeed in meeting her initial burden, she must show that "a reasonable employer would have foreseen the

---

[3]Although, the U.S. Supreme Court has found recently that an employer can be held vicariously liable for a hostile work environment created by a plaintiff's supervisor; *Burlington Industries, Inc. v. Ellerth,* ___U.S.___, 118 S.Ct. 2257 (1998); *Faragher v. City of Boca Raton,* ___U.S.___, 118 S.Ct. 2275 (1998); inasmuch as the environments in those cases were solely created by supervisors' affirmative acts foreseeable by employers and not situations of alleged tacit approval absent complaints; this court finds the case at bar distinguishable on its facts from those authorities.

employee's resignation, given the intolerable conditions of employment." *See Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 34(Tenn. 1996). Our supreme court has stated with regard to this standard of proof:

> ...[I]n the context of a hostile work environment claim, that standard requires a plaintiff claiming constructive discharge to demonstrate that the harassment is so severe or pervasive that work conditions were intolerable, a showing greater than the minimum required to prove hostile work environment.

*Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 34(Tenn. 1996). Ms. Parker reported no "cold-shoulder treatment" to Conwood that remained uninvestigated. And she failed to show that Conwood knew or should have known of such treatment. It necessarily follows that if Ms. Parker failed to prove hostile work environment, she therefore fails to prove constructive discharge.

Under authorities and according to the principles cited above, this court affirms the summary judgment of the trial court, and remands this case to the trial court for further proceedings as necessary. Costs on appeal are taxed against Appellant.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
PATRICIA J. COTTRELL, JUDGE