IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 28, 2018 Session

## MARK IV ENTERPRISES, INC., ET AL. v. BANK OF AMERICA, N.A., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 14-1677-IV     Russell T. Perkins, Chancellor**

_____

### No. M2017-00965-COA-R3-CV

_____

Appellants' employee embezzled funds from Appellants using the employee's Bank of America account. The employee wrote checks on Appellants' accounts to legitimate third party vendors but deposited the checks into her own personal account by way of Bank of America's ATMs. Appellants filed suit against Bank of America alleging that the bank's failure to either prevent this activity or alert Appellants thereto constituted causes of action for aiding and abetting conversion, aiding and abetting fraud, civil conspiracy, and negligence. The trial court granted Bank of America's motion to dismiss Appellants' claims for aiding and abetting fraud and conversion and for civil conspiracy based on Bank of America's lack of knowledge of Appellants' employee's wrongdoing. The court subsequently granted Bank of America's motion for summary judgment on the remaining negligence claim finding that the bank owed no duty to Appellants. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, J.J., joined.

Jean Dyer Harrison, Nashville, Tennessee, for the appellants, Mark IV Enterprises, Inc., Legacy Project Resources, LLC, and Tonya Gale Jones.

Andrea Taylor McKellar and Lyndsay Smith Hyde, Nashville, Tennessee, and Graham H. Claybrook, Charlotte, North Carolina, *Pro Hac Vice*, for the appellee, Bank of America, N.A.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Appellant Mark IV Enterprises, Inc. was a construction company in Nashville, Tennessee, until on or about January 1, 2010. Appellant Legacy Project Resources, LLC ("Legacy") is a project management company that manages construction projects in Nashville. Both entities share one principal, Tonya Jones. Susan Bennett was the bookkeeper for both companies. Appellants allege that from 2008 through 2010, Ms. Bennett embezzled funds from their bank accounts by depositing checks drawn on Appellants' accounts and made payable to Appellants' vendors into Ms. Bennett's own personal account at Bank of America, N.A. (the "Bank"). These checks were not made payable to Ms. Bennett, and many of them were unendorsed. At the time, the Bank's software did not scan to confirm that the check deposited in the ATM was made payable to the account holder or that it was endorsed.

On November 15, 2011, Appellants filed suit against the Bank in the Chancery Court of Davidson County. The case was removed to federal court by the Bank and then voluntarily nonsuited by Appellants. The case was re-filed in chancery court on December 3, 2014, then removed to federal court, and remanded back to chancery court once again. On August 28, 2015, the chancery court ("trial court") dismissed Appellants' aiding and abetting conversion, aiding and abetting fraud, and civil conspiracy claims, finding that Appellants' Complaint failed to state a claim under any of these theories. Although it is not clear from the trial court's written order dismissing these claims, later court orders appear to show the court's reasoning rested on the Bank's lack of notice of Ms. Bennett's actions.

Consequently, Appellants' sole remaining claim against the Bank was common law negligence. The parties engaged in discovery, and the Bank filed a motion for summary judgment on Appellants' negligence claim. The Bank argued that (1) Appellants' claim for negligence was preempted by the Uniform Commercial Code, and (2) in the alternative, Appellants' negligence claim must fail because the Bank did not owe a duty to Appellants as non-customers of the Bank. On January 31, 2017, the trial court granted summary judgment in favor of the Bank on the negligence claim, agreeing that the Bank owed no duty to appellants.

## II. ISSUES PRESENTED

Appellants present the following issues, as slightly reworded, for review on appeal:

1. Whether the trial court erred in dismissing Appellants' aiding and abetting claims?

2. Whether the trial court erred in finding that the Uniform Commercial Code applied to the transaction in this case?

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim, pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure, challenges the legal sufficiency of a complaint and is determined by an examination of the pleadings alone. *See Webb. v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). A defendant who files such a motion admits the truth of the relevant and material allegations in the complaint but asserts that those allegations fail to establish a cause of action. *Id.* "In considering a motion to dismiss, courts 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). On appeal, we review the trial court's legal conclusions regarding the adequacy of the complaint *de novo* with no presumption of correctness. *See Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013).

We review a trial court's ruling on a motion for summary judgment *de novo* without a presumption of correctness. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment may "satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is properly supported as provided in Tennessee Rule of Civil Procedure 56, in order "to survive summary judgment, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading, but must respond, and by affidavits or one of the other means provided in Rule 56, 'set forth specific facts' at the summary judgment stage showing that there is a genuine issue for trial.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). "[S]ummary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial." *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06).

## IV. DISCUSSION

A. <u>Aiding and Abetting Claims</u>

3

The first issue raised by Appellants relates to the trial court's dismissal of their "aiding and abetting" causes of action against the Bank. In the complaint, Appellants asserted that the Bank was complicit in and liable for Ms. Bennett's fraud and conversion. As this Court explained in *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Community Development Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. 2012):

> This alleged cause of action, if stated, would be based on the common law civil liability theory of aiding and abetting, which requires that "the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts." *Carr v. United Parcel Service*, 955 S.W.2d 832, 836 (Tenn. 1997) [*overruled on other grounds*, *Parker v. Warren County Utility Dist.*, 2 S.W.3d 170 (Tenn. 1999)] (quoting *Cecil v. Hardin*, 575 S.W.2d 268 (Tenn.1978)).

*Id.* at 552. As provided in Section 876 of the Restatement (Second) of Torts:

> For harm resulting to a third person from the tortious conduct of another, a person is liable if he:
>
> (a) orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement of Torts § 876 (1934 & 2004 Supp.). "Civil liability for aiding and abetting requires affirmative conduct. **Failure to act** or mere presence during the commission of a tort **is insufficient** for tort accomplice liability." *Carr*, 955 S.W.2d at 836 (emphasis added).

On appeal, Appellants' argument focuses on subsection (c) of Section 876, which would impose liability if the Bank gave "substantial assistance" to Ms. Bennett in accomplishing a tortious result and the Bank's own conduct, separately considered, constituted a breach of duty to the Appellants. However, the Appellants did not properly

raise this argument in the trial court. In fact, the trial court entered its order granting the Bank's motion to dismiss Appellant's aiding and abetting claims on August 28, 2015. It was not until approximately eighteen months later, on March 2, 2017, that Appellants raised the argument regarding the application of subsection (c) for the first time in their motion to alter or amend. "A Rule 59.04 motion to alter or amend a judgment, however, may not be used to raise issues or legal arguments that previously were not tried or asserted." *Van Grouw v. Malone*, 358 S.W.3d 232, 236 (Tenn. Ct. App. 2010) (citing *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). Moreover, "it is well-settled that issues may not be raised for the first time upon appeal." *Id.* (citing *In re M.L.D.*, 182 S.W.3d at 895). Therefore, since Appellants did not properly raise the argument regarding subsection (c) in the trial court, we will not consider this issue on appeal.

Instead, Appellants' aiding and abetting fraud and conversion claims presented in the trial court were based on subsection (b), which would impose liability on the Bank if it knew about Ms. Bennett's fraud and/or conversion and gave substantial assistance or encouragement to Ms. Bennett in furtherance of these torts. Since the underlying torts of Appellants' aiding and abetting claims are fraud and conversion, the allegations of the complaint must satisfy the particularity requirements of Rule 9.02 of the Tennessee Rules of Civil Procedure. *See PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship*, 387 S.W.3d at 547, 554.

Appellants' complaint alleges that the Bank aided and abetted fraud and conversion by "ignor[ing] the misconduct of Ms. Bennett . . ."; "by turning a blind eye to [Ms. Bennett's] activities and doing nothing to close a known security flaw"; "ignor[ing] its knowledge or constructive knowledge of Ms. Bennett's misconduct . . ."; "fail[ing] to close Ms. Bennett's account . . ."; "fail[ing] to stop Ms. Bennett . . ."; "by allowing [Ms. Bennett] to use a known security flaw without impediment"; and "by turning a blind eye to [Ms. Bennett's] activities . . . ." These allegations speak to the failure of the Bank to act as a result of its alleged constructive knowledge of Ms. Bennett's activities. We hold that these allegations do not amount to the "affirmative conduct" required by the Bank to form the basis of a claim for aiding and abetting. *See Carr*, 955 S.W.2d at 836.

In sum, the allegations of Appellants' complaint are insufficient, as a matter of law, to state a claim for aiding and abetting fraud or conversion. At most, the allegations of Appellants' complaint set forth vague instances of inaction or failures to act on the part of the Bank that are insufficient to state a claim for aiding and abetting under Tennessee law. *See Carr*, 955 S.W.2d at 836 ("civil liability for aiding and abetting requires affirmative conduct. Failure to act or mere presence during the commission of a tort is insufficient for tort accomplice liability."). We therefore affirm the trial court's dismissal of Appellants' aiding and abetting claims.

5

B.    Negligence Claim

Finally, Appellants argue that the trial court erred in granting summary judgment in favor of the Bank on their common law negligence claim. While the trial court granted summary judgment based upon its conclusion that no duty of care was owed by the Bank to the Appellants, our analysis begins and ends before tackling that issue. "This Court may affirm a trial court's award of summary judgment on grounds different from those which provided the basis for the trial court's decision." *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 773 (Tenn. Ct. App. 2015) (citing *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001)).

The case at hand centers around checks drawn on Appellants' business bank accounts. These checks were made payable to Appellants' vendors but ultimately deposited in Ms. Bennett's account by virtue of the Bank's ATMs. Article 3 of the UCC governs "Negotiable Instruments," and Article 4 governs "Bank Deposits and Collections." This Court has previously explained that the UCC creates a nearly comprehensive system for dealing with the allocation of loss related to check negotiation:

> Courts determining whether common-law or other non-UCC claims and remedies have been displaced by the UCC have emphasized the policies favoring certainty and uniformity. Thus, the prevailing view is now that when the UCC provides a comprehensive remedy for the parties to the transaction, common-law and other non-Code claims and remedies should be barred.

> Articles 3 and 4 of the UCC embody a delicately balanced statutory scheme governing the endorsement, negotiation, collection, and payment of checks. They provide discrete loss-allocation rules uniquely applicable to banks. While this scheme is not comprehensive, it is nearly so. Therefore, courts dealing with "hard cases" should be hesitant to recognize common-law or non-UCC claims or to employ common-law or non-UCC remedies in the mistaken belief that they are dealing with one of the rare transactions not covered by the UCC.

> The weight of the case law comes down against permitting common-law actions to displace the UCC's provisions regarding transactions covered by Articles 3 and 4. Accordingly, a large number of courts have refused to recognize common-law or non-UCC claims in general, and specifically common-law or non-UCC negligence claims or conversion claims, arising from transactions governed by Articles 3 or 4.

*C-Wood Lumber Co. v. Wayne Cty. Bank*, 233 S.W.3d 263, 281-82 (Tenn. Ct. App. 2007) (Internal citations omitted).

We determine that the allegations that form the basis of Appellants' common law negligence claim are governed by Articles 3 ("Negotiable Instruments") and Article 4 ("Bank Deposits and Collections") of the UCC. *See* Tenn. Code Ann. §§ 47-3-101 *et seq.*, 47-4-101 *et seq.*, and more particularly Tenn. Code Ann. § 47-3-404 "Imposters; Fictitious Payees" and/or § 47-3-405 "Employer's Responsibility for Fraudulent Endorsement by Employee." We heed the warning found in *C-Wood Lumber Co.* and decline to hold that this is one of the rare transactions not covered by the UCC. As a result, Appellants' common law negligence claim was preempted by the remedies afforded in the UCC for losses associated with the negotiation of checks. The judgment of the trial court is, therefore, affirmed in all respects.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellants, Mark IV Enterprises, Inc., Legacy Project Resources, LLC, and Tonya Gale Jones, and their surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE