**Albert RHEA and Gary Schoonover**
**Plaintiffs,**

v.

**DOLLAR TREE STORES, INC., Donna**
**Carlo, Jim Stephens, and Steve**
**McDonnell Defendants.**

**No. 04–2254–M1/V.**

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 2, 2005.

William T. Winchester, The Law Offices of William T. Winchester, Memphis, TN, for Plaintiffs.

Craig Cowart, Frederick J. Lewis, Melissa Kimberly Hodges, Lewis Fisher Henderson Claxton & Mulroy, Memphis, TN, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ORDER DENYING PLAINTIFFS' MOTION TO STRIKE

MCCALLA, District Judge.

Before the Court is the Defendants' Motion to Dismiss, filed June 25, 2004. Plain-

tiffs responded in opposition on July 26, 2004. Defendants filed a reply memorandum on September 7, 2004. In addition, Defendants' filed a Supplemental Motion to Dismiss on September 21, 2004. Plaintiff responded to the Supplemental Motion to Dismiss on October 20, 2004. On that date, Plaintiffs also filed a Motion to Strike. Defendants responded to the Motion to Strike on November 8, 2004. For the following reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss. The Court also DENIES Plaintiffs' Motion to Strike.

### I. Background

Plaintiffs Albert Rhea ("Rhea") and Gary Schoonover ("Schoonover") filed their Original Complaint on April 12, 2004, asserting claims for unlawful discrimination based on sexual orientation under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Tennessee Human Rights Act ("THRA"), and for defamation, intentional economic harm, breach of contract, retaliatory discharge, and civil conspiracy. Plaintiffs filed an Amended Complaint on September 7, 2004, alleging discrimination on the basis of sex.[1] In particular, Plaintiffs allege they suffered discrimination on account of their gender non-conforming behavior and appearance.

Plaintiffs began working for Defendant Dollar Tree Stores, Inc. ("Dollar Tree"), at 3430 Poplar Plaza in Memphis, Tennessee on or about June 13, 2003. During their employment, Plaintiffs allege that Defendant Donna Carlo ("Carlo"), the manager of the Poplar Plaza store, created a hostile work environment based on the Plaintiffs' sex and gender non-conforming behavior and appearance. Plaintiffs specifically allege that Carlo threatened to do bodily

---

1. The Amended Complaint also contains additional factual allegations.

harm to the Plaintiffs and directed toward the Plaintiffs derogatory and profane names.

In particular, Carlo made numerous derogatory statements regarding Plaintiffs' sex and gender non-conforming behavior and appearance.[2] Carlo also informed other Dollar Tree employees and higher management that the Plaintiffs were troublemakers, thieves, and not trustworthy.

Plaintiffs reported the offending conduct to Dollar Tree District Manager, Defendant Jim Stephens ("Stephens"), Dollar Tree Regional Manager, Defendant Steve McDonnell ("McDonnell"), and Dollar Tree Corporate Officers without success. Plaintiffs allege that Stephens and McDonnell tacitly approved such conduct or took adverse employment action against Plaintiffs including: transfers to other stores; reductions in pay, hours, and responsibilities; and constructive or actual termination.

After Plaintiffs' raised concerns regarding the offending conduct with Stephens and McDonnell, Schoonover was promoted to assistant store manager. Plaintiffs allege that following her promotion, Carlo told Schoonover that he needed to keep his mouth shut about sexual harassment if he wanted to keep his job.

Plaintiffs also allege that when Schoonover was transferred to another store, the new store manager, Carol Woodard, stated, with respect to a pink shirt, that "pink is okay for a queer." (Pl.'s Am. Compl. ¶ 19.) Moreover, after Rhea was transferred to another store, Carlo allegedly told the manager of that store that Rhea was "queer," "a bit* *," and that he was not trustworthy. (Pl.'s Am. Compl. ¶ 20.) According to the Amended Complaint, Rhea then complained to Stephens, who told Rhea that he would "never hold another key position with this company." (Id.) Stephens also then told the store manager to cut Rhea's hours.

Plaintiffs allege that despite their awareness of the hostile work environment created by Carlo, Stephens and McDonnell did not take any corrective action and tacitly approved Carlo's conduct. Plaintiffs allege that Stephens helped create the hostile work environment when he told Carlo that Rhea needed to shave because he was looking too much like a man. Despite Plaintiffs' repeated complaints to Stephens, McDonnell and Dollar Tree's Human Resources Department no corrective action was taken.[3]

## II. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint "for failure to state a claim upon which relief can be granted." When considering a 12(b)(6) motion to dismiss, a court must treat all of

---

**2.** In particular, Carlo made the following statements: "You got a hair cut. Your [sic] looking more like a man now."; telling Plaintiff Schoonover "Oh, your [sic] trying to copy me," after learning he bleached his hair; stating "I might know somebody I can set you up with," "For a couple of gay guys, you do a good job," "I've got a valium if you need to calm down," and "For a couple of gay guys, you're okay."; commenting in front of several other people that Plaintiff Rhea "gripes worse than any bit* * there was."; telling others when she first hired Plaintiffs that she "hired two new ones. They're half and half.

They're actually guys, but ..."; commenting, with respect to lifting boxes, that "I think he might be scared he will break a nail."; and stating at an employee meeting "My name is Donna and I am the only bit* * here. Tomorrow (to Rhea), you can be a bit* *." (Pl.'s Am. Compl. ¶ 12.)

**3.** Plaintiffs also allege they were told by a Dollar Tree employee working in the Human Resources Department that Defendant Carlo had done the same thing to another Dollar Tree employee. (Pl.'s Am. Compl. ¶ 24.)

the well-pleaded allegations of the complaint as true, *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir.1992), and must construe all of the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### III. Analysis

As an initial matter, Defendants move to dismiss Plaintiffs' complaint against Defendant Donna Carlo on the basis of insufficiency of process. Next, Defendants move to dismiss Plaintiffs' claims for discrimination under Title VII and the Tennessee Human Rights Act pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also move to dismiss Plaintiffs' defamation, breach of contract, retaliatory discharge, civil conspiracy, and intentional economic harm claims pursuant to Rule 12(b)(6).

### A. Insufficiency of Process

■ Defendants contend that the claims against Defendant Carlo should be dismissed due to insufficient service of process. Defendants assert that a copy of the summons and complaint was mailed to Carlo at one of Dollar Tree's Memphis stores. Defendants further assert that Carlo is no longer employed by Dollar Tree and never received the summons and complaint mailed to her. Plaintiffs, in their response to Defendants' initial motion to dismiss, argue that to the extent service of process against Carlo was defective, such a defect could be cured, because

the lawsuit was filed on April 12, 2004, and under Federal Rule of Civil Procedure 4(m), Plaintiffs had 120 days to obtain service of process. The record does not reflect that a return of service was executed by the Plaintiffs on Defendant Carlo. Moreover, Plaintiffs have not otherwise represented that any such defective service of process has since been cured. The Court therefore GRANTS Defendants' motion to dismiss all claims against Defendant Carlo.

### B. Title VII

Defendants assert five arguments in support of their motion to dismiss Plaintiffs' Title VII claim. Defendants first contend that Plaintiffs' fail to state a claim for sexual orientation discrimination. Next, Defendants contend that Plaintiffs failed to state a claim for individual liability under Title VII. Defendants also contend that Plaintiffs failed to exhaust administrative remedies. Defendants next argue that Plaintiffs did not bring a timely sex stereotyping claim. Finally, Defendants assert that Plaintiffs fail to state a claim for sex stereotyping discrimination under Title VII.

#### 1. Sexual Orientation Discrimination Under Title VII

■ Defendants move to dismiss Plaintiffs' claim for discrimination on the basis of sexual orientation. Defendants specifically contend that Title VII does not protect sexual orientation discrimination. In the Amended Complaint, Plaintiffs omitted the sexual orientation discrimination claim present in the original complaint.[4] Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claim of dis-

---

**4.** Even if such a claim were asserted, it must be dismissed because it is not cognizable un-

der Title VII. *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir.2001).

crimination on the basis of sexual orientation.

### 2. Individual Liability Under Title VII

■ "[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997). In the instant action, Plaintiff has not alleged that any of the individual Defendants qualifies as an "employer" for purposes of Title VII. Moreover, Plaintiffs have not countered any of Defendants' assertions regarding individual liability under Title VII. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Title VII claims against individual Defendants Stephens and McDonnell.[5]

### 3. Failure to Exhaust Administrative Remedies

In support of their administrative exhaustion argument, Defendants relied on exhibits which they seek to introduce into the record as attachments in their moving papers. Plaintiffs' filed a Motion to Strike these exhibits. The Court will first address Plaintiffs' Motion to Strike and then determine whether Plaintiffs failed to exhaust their administrative remedies.

### a. Plaintiffs' Motion to Strike

■ The exhibits at issue include each Plaintiff's individual Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the charge information forms submitted by each Plaintiff to the EEOC. Plaintiffs move the Court to strike these exhibits pursuant to Federal Rule of Civil Procedure 12(f) because they concern matters outside the pleadings.[6] Defendants contend that Rule 12(f) only applies to "pleadings" and is inapplicable to exhibits attached to a memorandum in support of a motion to dismiss.[7] The Court finds that the Defendants' argument is well-taken and therefore DENIES Plaintiffs' motion to strike.

### b. Matters Outside the Pleadings

■ Although the Court has denied Plaintiffs' Motion to Strike, it must still determine whether it can consider the above referenced exhibits in ruling on the present matter. Generally, when ruling on a 12(b)(6) motion to dismiss, the Court does not consider matters outside the

---

5. The Court has already granted Defendants' motion to dismiss all of Plaintiffs' claims against Defendant Carlo.

6. Federal Rule of Civil Procedure 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.
Fed.R.Civ.P. 12(f).

7. The text of Rule 12(f) provides that a motion to strike can only be made with respect to

pleadings. Fed.R.Civ.P. 12(f); *Ernst Seidelman Corp. v. Mollison*, 10 F.R.D. 426, 427 (S.D.Ohio 1950). Under Federal Rule of Civil Procedure 7(a), pleadings include the following documents: a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third party answer. Fed.R.Civ.P. 7(a). Therefore, under the Federal Rules of Civil Procedure, exhibits attached to motions are not pleadings and are outside the scope of Rule 12(f). *See Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir.1966) (stating that Rule 12(f) "specifically relates to matters to be stricken from pleadings but does not make provision for testing the legal sufficiency of affidavits by a motion to strike.").

pleadings. *Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir.1997). The Sixth Circuit Court of Appeals has held, however, that " '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.' " *Id.* at 89 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Moreover, "[c]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999) *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The Eighth and Ninth Circuit Courts of Appeals have held that an EEOC charge is a part of the public record. *Faibisch v. University of Minnesota*, 304 F.3d 797, 802–03 (8th Cir.2002) (concluding that EEOC charge part of the public record and therefore Rule 12(c) motion to dismiss not converted into motion for summary judgment); *EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 749 (9th Cir.1991)(finding that EEOC charge became public record after district court lifted seal on complaint).[8]

The Court therefore concludes that it can consider the EEOC Charge of Discrimination forms at issue. The individual Charge Information Forms, however, are matters outside the pleadings and therefore shall not be considered in determining whether Plaintiffs exhausted their administrative remedies.

**c. Administrative Exhaustion**

██ A federal court cannot have subject matter jurisdiction over a Title VII claim unless the claimant first unsuccessfully seeks administrative relief. *Ang v. Procter and Gamble Co.*, 932 F.2d 540, 545 (6th Cir.1991). "Courts have thus held that if the claimant did not first present a claim to the ... (EEOC), that claim may not be brought before the court." *Id.* "The judicial complaint must be limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.' " *Id.* (quoting *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir.1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978)). Under this rule, the Sixth Circuit has noted that "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

██ In the case at bar, both Plaintiffs, in their EEOC charge of discrimination forms, checked off that they were discriminated against on the basis of sex.[9] The Court finds that a claim for sex stereotyp-

**8.** Moreover, the Eighth Circuit in *Faibisch* stated that district courts have regularly looked at EEOC charges as matters of public record. *Faibisch*, 304 F.3d at 802 (citing *Rogan v. Giant Eagle, Inc.*, 113 F.Supp.2d 777, 782 (W.D.Pa.2000); *Mullen v. Topper's Salon & Health Spa, Inc.*, 99 F.Supp.2d 553, 554 n. 1 (E.D.Pa.2000); *McBride v. Routh*, 51 F.Supp.2d 153, 155 (D.Conn.1999) (citing *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986), *rev'd on other grounds sub nom. Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991))).

**9.** Additionally, both Plaintiffs checked off the box on the charge form marked "other." The box marked "other" requests the individual completing the charge form to further specify the type of discrimination that took place. In a space provided on the charge form, both Plaintiffs stated they were discriminated against because of the their sexual orientation.

ing could have reasonably expected to grow out of each Plaintiff's charge of discrimination to the EEOC. Accordingly, the Court finds that Plaintiffs properly exhausted their administrative remedies regarding their Title VII sex-stereotyping claim.

### 4. Timeliness of Plaintiffs' Sex Stereotyping Claim

■ Plaintiffs received their Right to Sue Notices from the EEOC on or about January 14, 2004. A Title VII Plaintiff must ordinarily file a complaint within ninety days of receiving a notice of dismissal and right to sue from the EEOC. *Seay v. Tennessee Valley Auth.* 339 F.3d 454, 469 (6th Cir.2003). Plaintiffs filed their Original Complaint on April 12, 2004, which was within ninety days from receiving the Right to Sue Notices.[10] Plaintiffs then filed their Amended Complaint on September 7, 2004.

■ Federal Rule of Civil Procedure 15(c)(2) provides that an amendment to a complaint relates back to the date of the original complaint when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed R. Civ. P. 15(c)(2). The Court finds that the

Amended Complaint satisfies this requirement. The Plaintiffs' Amended Complaint therefore relates back to April 12, 2004, the date the original complaint was filed. Accordingly, the Court finds that Plaintiffs' Original Complaint was filed within the applicable ninety day period.

### 5. Sex Stereotype Discrimination under Title VII

■ Defendants next contend that Plaintiffs have failed to properly allege a claim of sex stereotyping.[11] In particular, Defendants contend that the Amended complaint fails to allege that the discrimination Plaintiffs experienced was due to their failure to conform with sex stereotypes as opposed to their sexual orientation. The Supreme Court held in *Price Waterhouse v. Hopkins,* that sex discrimination under Title VII bars gender discrimination, including discrimination on the basis of sex stereotypes. 490 U.S. 228, 250–51, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *See Smith v. City of Salem,* 378 F.3d 566, 571 (6th Cir.2004) (stating *Price Waterhouse* "held that Title VII's prohibition of discrimination 'because of ... sex' bars gender discrimination, including discrimination based on sex stereotypes. . . .")[12]

**10.** Plaintiffs' Amended Complaint states that the EEOC "issued notices informing Plaintiffs of their right to sue on January 14, 2004." (Pl.'s Am. Compl. ¶ 28.) Presumably, Plaintiffs received the Right to Sue Notices on either January 14, 2004, or at a later date.

**11.** Defendants have not moved to dismiss Plaintiffs' Title VII claim on the basis that Plaintiffs failed to establish a prima facie case of sex discrimination under Title VII through either the disparate treatment or hostile work environment models. Accordingly, the Court does not address these issues at this time.

**12.** In *Price Waterhouse,* the Plaintiff was denied partnership in an accounting firm, in

part, because she failed to conform to female stereotypes. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250–52, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Comments from partners at the firm noted that the Plaintiff was "macho," that she "overcompensated for being a woman," that she should take "a course at charm school," and that she used foul language. *Id.* at 235, 109 S.Ct. 1775. Plaintiff was advised that to improve her chances for partnership she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.*

The Court concluded that the above comments represented sex stereotyping and stated that "[i]n the specific context of sex stereotyp-

Having reviewed the allegations of the Amended Complaint in the case at bar, the Court finds that Plaintiffs have properly pled a claim for sex stereotyping discrimination. Accordingly the Court DENIES Defendants' motion to dismiss Plaintiffs' sex stereotyping claim.

### C. Tennessee Human Rights Act

Defendants make three arguments in support of their motion to dismiss Plaintiffs' THRA discrimination claim. Defendants first contend that Plaintiffs fail to state a claim for individual liability under the THRA. Defendants next contend that Plaintiffs fail to state a claim for sexual orientation discrimination under the THRA. Finally, Defendants argue that Plaintiffs did not allege facts supporting a claim of sex stereotyping discrimination.

### 1. Individual Liability

■ In accordance with Title VII analysis, the THRA generally does not impose individual liability on supervisors or coworkers. *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 835 (Tenn.1997), *overruled on other grounds, Parker v. Warren County Util. Dist.*, 2 S.W.3d 170 (Tenn.1999); *McNeail–Tunstall v. Marsh USA*, 307 F.Supp.2d 955, 974 (W.D.Tenn.2004) ("In line with Title VII analysis, the Tennessee Courts hold that the THRA generally does not impose individual liability on supervisors or co-workers."). The THRA is broader than Title VII, however, and provides liability for "an individual who aids, abets, incites, compels, or commands an employer to engage in" any discriminatory acts or practices. *Carr*, 955 S.W.2d at 835–36; *See* Tenn.Code Ann. § 4–21–301(2). Because "aiding and abetting" is not defined in the THRA, the Tennessee Supreme Court applies the common law theory of aiding and abetting, which requires that "the individual defendant know that the employer's conduct constituted a breach of duty and give substantial assistance or encouragement to the employer in its discriminatory acts." *McNeail–Tunstall*, 307 F.Supp.2d at 974 (citing *Carr*, 955 S.W.2d at 836).

■ An individual's failure to act or mere presence during the employer's discrimination is insufficient to attach liability. *Id.* (citing *Carr*, 955 S.W.2d at 836). Instead, liability under the THRA requires affirmative conduct by the individual defendant. *Id.* (citing *Carr*, 955 S.W.2d at 836). "Liability, however, is not imposed based on the individual defendant's own discriminatory acts; it requires distinct conduct that aids or abets discrimination by the employer, as when, for example, the individual defendant prevents the employer from taking corrective action." *Id.* at 974 (citing *Carr*, 955 S.W.2d at 836, 838; *Crutchfield v. Aerospace Ctr. Support*, 202

ing, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id.* at 250, 109 S.Ct. 1775. The Court further added that "[a]s for the legal relevance of sex stereotyping, we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." *Id.* at 251, 109 S.Ct. 1775.

The Sixth Circuit Court of Appeals, in *City of Salem*, also concluded that sex-stereotyping on the basis of "a person's gender non-con- forming behavior is impermissible discrimination." 378 F.3d at 575. In *Smith*, a male city fire department employee, who was diagnosed with gender identity disorder, alleged that he was discriminated against based on his failure to conform to sex stereotypes. *Id.* at 571–72. The Court of Appeals held that because Smith "alleged that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind Defendants' actions, Smith ... sufficiently pleaded claims of sex stereotyping and gender discrimination." *Id.* at 572.

F.3d 267, 1999 WL 1252899, at *2 (6th Cir. Dec.14, 1999)).

■■■ Defendants contend that Carlo, Stephens, and McDonnell cannot be liable under the THRA because they did not aid or abet any discrimination conducted by Dollar Tree. The Court finds that the Plaintiffs have not alleged that McDonnell either aided, abetted, incited, compelled or commanded an employer to engage in any discriminatory act or practice. Moreover, the Plaintiffs have not referred the Court to any allegations that would support a finding of individual liability. The Court finds, however, that Plaintiffs have stated a claim against Defendant Stephens for individual liability under the THRA. Plaintiffs specifically allege in the Amended complaint that after Rhea made a complaint to Stephens about Carlo's conduct, Stephens told a store manager to cut Rhea's hours. By making that instruction, Stephens commanded an employer to engage in a discriminatory act or practice. The Court therefore GRANTS Defendants' motion to dismiss Plaintiffs' THRA claims against Defendant McDonnell.[13] The Court, however, DENIES Defendants' motion to dismiss Plaintiffs' THRA claim against Defendant Stephens.

### 2. Sexual Orientation Discrimination Under the THRA

Defendants move to dismiss Plaintiffs' THRA claim of sexual orientation discrimination on the grounds that the THRA does not prohibit this form of discrimination. In their Amended Complaint, Plaintiffs omitted the THRA claim for sexual orientation discrimination that was present in

the Original Complaint.[14] Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiffs' THRA sexual orientation discrimination claim.

### 3. Sex Stereotyping Discrimination Under the THRA

Defendants advance the same arguments in support of their motion to dismiss Plaintiffs' THRA sex stereotyping claim as were advanced regarding Plaintiffs' Title VII claim. In particular, Defendants contend that Plaintiffs fail to allege that the discrimination Plaintiffs experienced was due to their failure to conform with sex stereotypes as opposed to their sexual orientation.

■■■ "The stated purpose and intent of the Tennessee Human Rights Act is to provide for execution, within Tennessee, of the policies embodied in the analogous federal anti-discrimination laws." *Weber v. Moses*, 938 S.W.2d 387, 390 (Tenn.1996) (citing Tenn.Code Ann. § 4–21–101(a)(1)). Therefore, claims brought under the THRA are analyzed in the same manner as those under Title VII. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996) (finding that analysis of hostile work environment and constructive discharge claims "is the same under both the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act"); *See also Gee–Thomas v. Cingular Wireless*, 324 F.Supp.2d 875, 881 (M.D.Tenn.2004) (finding that "the analysis of claims under the THRA is the same as under Title VII").

The Court has already concluded that Plaintiffs properly alleged a claim of sex stereotype discrimination under Title VII.

---

**13.** As previously noted, the Court has granted Defendants' motion to dismiss all of Plaintiffs' claims against Defendant Carlo.

**14.** As the Court stated earlier, even if Plaintiffs alleged such a claim, it would fail be-

cause Title VII does not recognize a claim for sexual orientation discrimination. *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d at 261.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' THRA sex stereotype discrimination claim.

### D. Defamation

 Defendants contend that Plaintiffs cannot state a claim of defamation because their allegations fail to demonstrate publication of the defamatory statements. To establish a prima facie case of defamation in Tennessee, the Plaintiff must show that: "1)a party published a statement; 2)with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). "Publication is a term of art meaning the communication of defamatory matter to a third person." *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn.1994). In the context of intra-corporate communications, however, "communication among agents of the same corporation made within the scope and course of their employment relative to duties performed for that corporation are not to be considered as statements communicated or publicized to third persons." *Woods v. Helmi* 758 S.W.2d 219, 223 (Tenn.Ct.App.1988) (interpreting *Freeman v. Dayton Scale Co.*, 159 Tenn. 413, 19 S.W.2d 255 (1929).

 In the instant case, Defendants assert that the alleged defamatory statements made by Defendant Carlo were intra-corporate communications and therefore did not satisfy the publication requirement. On the other hand, Plaintiffs allege that Defendant Carlo told other Dollar Tree employees and higher management "that Plaintiffs were troublemakers, thieves, and not trustworthy." (Pl.'s Am. Compl. ¶ 14.) It appears that this publication may have been to individuals outside the scope of intra-corporate communication protection. The Court finds that this allegation is sufficient to survive a motion to dismiss. The Court therefore DENIES Defendants' motion to dismiss Plaintiffs' defamation claim.

### E. Breach of Contract

Tennessee adheres to the doctrine of employment at will "in employment relationships not established or formalized by a contract for a definite term." *Crews v. Buckman Laboratories Int'l., Inc.* 78 S.W.3d 852, 857 (Tenn.2002). Generally, under this doctrine, both the employer and employee can, with certain exceptions, terminate the employment relationship " 'at any time for good cause, bad cause, or no cause.' " *Id.* at 857–58 (quoting *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d at 574).

 Yet, "[e]ven in the absence of a definite durational term, an employment contract still may exist with regard to other terms of employment." *Rose v. Tipton County Public Works Dept.*, 953 S.W.2d 690, 692 (Tenn.Ct.App.1997). In this respect, an employee handbook can constitute a part of an employment contract. *Id.* A handbook will not constitute a contract, however, unless it contains "specific language showing the employer's intent to be bound by the handbook's provisions." *Id.*

The Tennessee Court of Appeals has stated that it could "conceive of no clearer way for an employer to express its intent not to be bound by an employee handbook's provisions than the employer's specific statement that the handbook is not a contract or that the handbook should not be construed as a contract." *Adcox v. SCT Products*, 1997 WL 638275, at *4 (Tenn.Ct.App. Oct.17, 1997). Further-

more, "'[a]ny language that preserves a unilateral right on the part of the employer to alter or modify the contents of the handbook' generally precludes the handbook from being considered an employment contract." *Rose*, 953 S.W.2d at 693–94 (quoting *Claiborne v. Frito–Lay, Inc.*, 718 F.Supp. 1319, 1321 (E.D.Tenn.1989)) (*But see Reed v. Alamo Rent–A–Car, Inc.*, 4 S.W.3d 677, 688 (stating that above proposition does not apply in situations where employer's handbook also included clear language demonstrating intent to be bound by handbook's provisions.)).

■■■ In support of their breach of contract claim, Plaintiffs allege that notwithstanding express language in the document to the contrary, the Dollar Tree Stores, Inc. Store Associate's Guidelines constituted an employment contract. The Dollar Tree Stores, Inc. Store Associate's Guidelines contain the following provisions:

> This booklet does not and is not intended to create a contract of employment relationship, or create employee rights beyond those required by applicable law or regulation. At all times associates are "at will" employees of the company which means either the associate or the company may terminate the employment relationship at any time for any reason. The company reserves the right to rescind, add or otherwise change any of the policies, procedures or benefits described in this booklet at any time, without prior notice and at its sole discretion. The company may also waive or make exceptions to the policies described herein on a case by case basis.

(Mem. in Supp. of Def.'s Mot. to Dismiss, Ex. A.) Because the Guidelines provide clear language stating that the Guidelines do not and are not intended to create an employment contract and contain language providing a unilateral right for the employer to either rescind, add or change any of the policies, procedures or benefits described in the Guidelines, the Court finds that the Guidelines do not constitute an employment contract. Plaintiff has not presented to the Court any portion of the Guidelines containing language demonstrating the employer's intent to be bound by the Guidelines' provisions. Because there is no contract under which the Plaintiffs can state a breach of contract claim, Plaintiffs' claim must fail. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' breach of contract claim.

### F. Civil Conspiracy

■■■ A civil conspiracy requires "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau–Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn.2002). In Tennessee, however, "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, *each acting within the scope of his or her employment.*" *Id.* at 703–04. Instead, an actionable claim of intra-corporate conspiracy requires that a complaint allege "that corporate officials, employees, or other agents acted outside the scope of their employment and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation." *Id.* at 704.

■■■ Because Plaintiffs' do not allege that the individual managers at Dollar Tree acted outside the scope of their employment or that they engaged in conduct to pursue their own personal purposes, Plaintiffs have failed to state a claim for civil conspiracy. The Court, therefore,

GRANTS Defendants' motion to dismiss Plaintiffs' civil conspiracy claim.

### G. Retaliatory Discharge

Defendants argue that Plaintiffs' retaliatory discharge claim must be dismissed because Plaintiffs failed to state a claim for a violation of Title VII, the THRA or Tennessee common law. The Court, however, has already concluded that the Amended Complaint properly alleges a claim for sex stereotype discrimination under Title VII and the Tennessee Human Rights Act. Accordingly, the Court finds Defendants' argument unavailing and DENIES the motion to dismiss Plaintiffs' retaliatory discharge claim.

### H. Intentional Economic Harm

 Finally, Defendants move to dismiss Plaintiffs claim for intentional economic harm. Plaintiffs allege that the Defendants caused Plaintiff to suffer economic harm by, among other things, making unjustified transfers and cutting work hours. The Court finds that Tennessee law does not provide a cause of action for intentional economic harm arising from an employer's decisions to transfer employees and cut its employees hours. The Court therefore GRANTS Defendants' motion to dismiss Plaintiffs' claim of intentional economic harm.

### IV. Conclusion

For the foregoing reasons, the Court DISMISSES all of of Plaintiffs' claims against Defendant Carlo. The Court also DISMISSES Plaintiffs' Title VII claims against Defendants Stephens and McDonnell and Plaintiffs' Tennessee Human Rights Act claim against Defendant McDonnell. Additionally, the Court DISMISSES Plaintiffs' Title VII and THRA sexual orientation discrimination claims. Finally, the Court DISMISSES Plaintiffs'

breach of contract, civil conspiracy and intentional economic harm claims.

The Court DENIES Plaintiffs' Motion to Strike. The Court also DENIES Defendants' motion to dismiss Plaintiffs' sex stereotyping claim under Title VII and the THRA. Additionally, the Court DENIES Defendants' motion to dismiss Plaintiffs' THRA claim against Defendant Stephens. Finally, the Court DENIES Defendants' motion to dismiss Plaintiffs' defamation and retaliatory discharge claims.