# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON

**FOR PUBLICATION**

**Filed:**   March 2, 1998

| | |
|---|---|
| SANDRA SANDERS, ) | DYER CHANCERY |
| ) | |
| PLAINTIFF-APPELLEE, ) | |
| ) | Hon. William H. Inman, |
| v. ) | Senior Judge |
| ) | Sitting by Designation |
| DAVID W. LANIER AND ) | |
| STATE OF TENNESSEE, ) | |
| ) | No. 02S01-9706-CH-00060 |
| DEFENDANTS-APPELLANTS. ) | |

**FILED**

**March 2, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

FOR APPELLANT STATE OF:
TENNESSEE:

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Elizabeth Martin
Assistant Attorney General

FOR APPELLEE

Jerrold L. Becker
Scarlett A. Beaty
Lockridge, Becker & Valone, P.C.
Knoxville

# O P I N I O N

COURT OF APPEALS AFFIRMED AS MODIFIED                     HOLDER, J.

**OPINION**

The issue with which we are confronted is whether the State may be liable to a county employee for employment discrimination under the Tennessee Human Rights Act ("THRA") when the county employee is under the supervision of a state judge who commits quid pro quo sexual harassment against the county employee. The trial court answered the question in the negative holding that the State was not the plaintiff's employer under the THRA. The Court of Appeals reversed and held that the THRA imposed liability on the State under an economic realities test. For the reasons set forth in this opinion, we affirm as modified the appellate court's reversal of the trial court's judgment.

**FACTS**

The plaintiff alleges that she was employed as a Youth Services Officer with the Dyer County Juvenile Court. Youth Services Officers receive their compensation from the County.[1] The plaintiff, however, maintains that Chancellor David Lanier possessed the authority to hire, discipline, promote, and terminate her and all other juvenile court employees. Judge Lanier was a state judge and presided over both the chancery and juvenile courts in Dyer County.[2]

The plaintiff contends that Judge Lanier sexually harassed her. Her allegations include both sexual assault ("grabbing her breast and buttocks") and unwelcome sexual advances. She alleges that she repeatedly rejected Judge Lanier's unwelcome sexual advances and that Judge Lanier demoted her from her supervisory position in retaliation for rejecting his sexual advances. She

---

[1] Tenn. Code Ann. § 37-1-106.

[2] The 1972 Public Acts 1676-1680, Ch. 863 created a law and equity court in Dyer County, Tennessee, and conferred Judge Lanier's jurisdictional authority over the juvenile court of Dyer County.

further alleges that Judge Lanier denied her an increase in salary and "unilaterally" altered her job requirements on a weekly basis.

The plaintiff filed suit against the State of Tennessee ("State") alleging violations of the THRA. The defendant filed a motion to dismiss for failure to state a claim for which relief can be granted. Tenn. R. Civ. P., Rule 12.02(6). The trial court found that the State was not the plaintiff's employer for purposes of THRA liability and dismissed the plaintiff's claim for failure to state a cause of action. The appellate court adopted the federal courts' economic realities test[3] and the common law test of control and reversed the trial court.

## DISCUSSION

The plaintiff alleges that Judge Lanier conditioned her employment benefits on sexual favors. The plaintiff further alleges that Judge Lanier possessed supervisory powers over her position and had the actual or apparent authority to alter the terms and conditions of her employment.

The plaintiff's claim against Judge Lanier can best be classified as quid pro quo harassment.[4] Quid pro quo harassment occurs when a supervisor conditions employment benefits on sexual favors. Kelly Carr v. U.P.S., ___ S.W. ___ (Tenn. 1997). To prevail under a quid pro quo theory of sexual harassment, a plaintiff must show:

---

[3]The economic realities test focuses on one's ability to control a plaintiff's job performance and employment opportunities. Eyerman v. Mary Kay Cosmetics, 967 F.2d 213, 219 (6th Cir. 1992).

[4]The plaintiff's complaint also sets forth a claim which could be properly classified as a supervisor-created hostile environment. Whether the employer is liable for its supervisor's actions in hostile work environment claims depends on: "(1) whether the supervisor's harassing actions were foreseeable or fell within the scope of employment; and (2) even if they were, whether the employer responded adequately and effectively to negate liability." Carr v. U.P.S., ___ S.W.2d ___ (Tenn. 1997). For the reasons stated in this opinion, we find that Judge Lanier's actions fell within the scope of employment. Whether the State responded adequately to Judge Lanier's harassment shall be decided on remand.

(1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability.

Kauffman v. Allied Signal, Inc., 970 F.2d 178, 186 (6th Cir. 1992).

In Carr, we held that an employer is strictly liable for a supervisor's quid pro quo harassment under the doctrine of respondeat superior. Carr, ___ S.W.2d at ___. Strict liability is imposed because: (1) a supervisor is the alter ego of the employer; and (2) a supervisor has the actual or apparent authority to alter an employee's terms or conditions of employment. "Under this alter ego theory of liability, a supervisor's acts within the scope of employment are imputed to the employer." Id.

As to the first four elements, the plaintiff is a member of a protected class. She has alleged that she was subject to unwelcome sexual advances and that the harassment was based on sex. She has further alleged that she suffered adverse job consequences as a result of her rejecting Judge Lanier's sexual advances.

Our last inquiry is whether Judge Lanier was acting within the scope of his employment. We believe that, when an employer empowers a supervisor with the ability to take actions that affect the employment status of subordinates, the supervisor's acts taken or threats made within the actual or apparent scope of authority are imputed to the employer. Ellerth v. Burlington Industries, Inc., 102 F.3d 848, 860 (7th Cir. 1996). Accordingly, respondeat superior is applicable under a quid pro quo theory when: (1) an employer empowers a supervisor with

4

the ability to alter job benefits; (2) the supervisor abuses the empowerment by making a subordinate's job benefits contingent upon receipt of sexual favors; and (3) the subordinate reasonably believes that the supervisor has the actual or apparent authority to alter the subordinate's job benefits.

The State, either directly or indirectly, empowered Judge Lanier with the authority to alter the plaintiff's job benefits. The plaintiff alleges that Judge Lanier conditioned her job benefits upon the receipt of sexual favors and that she sustained adverse job consequences as a result of her rejection of the sexual advances. The plaintiff's complaint further indicates that she believed that Judge Lanier had the actual or apparent authority to hire, discipline, promote, demote, or terminate her and all other juvenile court employees. The plaintiff's allegations, if true, would support a finding of respondeat superior liability.

The THRA prohibits an employer from discriminating against a person or an individual. See Tenn. Code Ann. § 4-21-401(1) (stating "[i]t is a discriminatory practice for an employer to . . . discriminate against an individual with respect to compensation, terms, conditions or privileges of employment."). "Employer" is defined as including "the state, or any political or civil subdivision thereof, . . . or any person acting as an agent of an employer, directly or indirectly." Tenn. Code Ann. § 4-21-102(4). A "person" is defined as including "one (1) or more individuals." By these terms, the definition does not require that the person or individual be an employee of the employer.

The State falls within the THRA's definition of an employer. Judge Lanier allegedly acted, directly or indirectly, as an agent of the State. Judge Lanier's alleged actions against the plaintiff constitute quid pro quo sexual harassment. In Carr, we held that an employer is strictly liable for its supervisor's quid pro quo harassment. Carr, ___ S.W.2d at ___. Accordingly, Judge Lanier's actions, if

5

proven, may be imputed to the State because the State empowered Judge Lanier with the authority he allegedly abused in an attempt to gain sexual favors.

The State's argument that sovereign immunity insulates the State from liability for Judge Lanier's alleged discriminatory acts is without merit. The THRA explicitly provides that the State may be liable for employment-related discrimination against an individual. Tenn. Code Ann. § 4-21-102(4) & 401. The plaintiff's allegations, therefore, satisfy the legislative requirements for imposition of State liability under the THRA.

The Court of Appeals' reversal of the trial court's decision is affirmed as modified, and the case is remanded to the trial court for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, State of Tennessee, for which execution may issue if necessary.

_____
Janice M. Holder, Justice

**CONCURRING:**

Anderson, C.J.
Drowota and Reid, J.J.

Birch, J., Not Participating

6