Christine ADAIR, et al., Plaintiffs,

v.

Johnny HUNTER, et al., Defendants.

Case No. 1:16–cv–3

United States District Court,
E.D. Tennessee, Southern Division,
at Chattanooga.

February 16, 2017

Arthur F. Knight, III, Jonathan Swann Taylor, Taylor & Knight, GP, Knoxville, TN, Russell L. Leonard, Law Office of Russell L. Leonard, Winchester, TN, for Plaintiffs.

Dawn Jordan, Peako Andrea Jenkins, Rebecca Lyford, Office of the Attorney General, Nashville, TN, Raymond W. Fraley, Jr, Fraley & Hill, Fayetteville, TN, for Defendants.

## ORDER

HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE

Before the Court is Defendants' Amended Motion for Partial Dismissal of Com-

plaint (Doc. 40).[1] For the reasons stated herein, Defendants' Motion will be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiffs initiated this action on January 6, 2016 claiming that Defendants, in their individual capacities, violated their rights under the First and Fourteenth Amendments to the United States Constitution and the Tennessee Human Rights Act. (Doc. 1 at 6–9). Because they are numerous and interconnected, the Court will first identify the Plaintiffs and companies involved in this lawsuit, and, where relevant, their relationships to each other.

Plaintiff Rodney Kilgore is the sole proprietor of Monteagle Wrecker Service ("MWS"), a road repair and wrecker service. He is also the managing member of Chattanooga Tire & Auto, LLC. Plaintiff William Kilgore[2] owns Sonny's Wrecker Service ("Sonny's"), and is Rodney Kilgore's father. Non-party Danny Barnes owns Monteagle Truck Center ("MTC"). Mr. Barnes is Rodney Kilgore's brother-in-law. Finally, Plaintiff Christine Adair "is an employee and/or performs employment services" for Chattanooga Tire & Auto, LLC and MWS. (*Id.* at 2). Accordingly, at all times relevant to this litigation, Adair was employed by Plaintiff Rodney Kilgore.

Defendant Johnny Hunter, a Lieutenant with the Tennessee Highway Patrol, is responsible for conducting inspections and

---

1. Defendants filed their original Motion for Partial Dismissal of Complaint (Doc. 11) on April 11, 2016. Defendants inadvertently omitted a qualified immunity defense in their original motion, but discussed same in their memorandum in support. (*See* Doc. 12). Accordingly, Defendants moved to amend their Motion on May 13, 2016. (Doc. 25). Because Defendants' Amended Motion is identical to their original Motion in all other respects, the

Court ordered supplemental briefing on the qualified immunity issue and permitted the Parties to rest on their previously-filed briefs on the remaining issues. (*See* Doc. 45).

2. Because there are two Parties with the last name "Kilgore," the Court will refer to the Kilgore Plaintiffs by their full names throughout this Order.

regulating wrecker services in Plaintiffs' geographic region. In this capacity, Hunter must decide "which wrecker services comply with the rules and regulations of the State of Tennessee and therefore must be placed on the state's rotation list." (Doc. 1 at 3). The "Rotation List" is comprised of wrecker services that meet or comply with the State's rules and regulations, and is used by the Tennessee Highway Patrol to call wrecker services to tow motor vehicles from the highway. Removal from the Rotation List can cause wrecker services to "sustain significant financial losses." (*Id.* at 4). Prior to the events that gave rise to this lawsuit, MWS, Sonny's, and MTC had always passed their yearly inspections, and have "never been suspended, removed, or otherwise disqualified from the state's rotation list." (*Id.* at 3).

On February 21, 2013, Defendant Hunter performed annual inspections at MWS, Sonny's, and MTC. Like in years past, all companies passed their inspections. Unlike at past inspections, however, Plaintiffs allege that Defendant Hunter "made unwelcome sexual advances and overtures to Plaintiff Christine Adair." (*Id.* at 4). Although Adair rebuffed his advances, Hunter allegedly made "similar overtures" on March 21 and 22 of 2013. All of these "overtures, advances and requested for [sic] sexual favors were unwelcome." (*Id.*). Over the course of the next several months, Hunter allegedly continued to make "similar comments" to Adair through phone calls and text messages. (*Id.*). Adair claims that she was humiliated and embarrassed by Hunter's conduct. By virtue of her employment, however, she was forced

to be in contact with Hunter to ensure that her employers were in compliance with State rules and regulations.

On June 6, 2016, Sonny's and MTC were removed from the Rotation List by Hunter's direct supervisor, Defendant Jesse Brooks, a Captain with the Tennessee Highway Patrol. Although neither Sonny's nor MTC employ Adair,[3] Plaintiffs allege that the June 6 removal of these companies was recommended by Hunter to Brooks because Adair "refus[ed] to capitulate to Defendant Hunter's sexual advances." (*Id.*). Defendant Hunter allegedly refused to discuss with Plaintiffs his rationale for removing Sonny's and MTC from the Rotation List. Accordingly, Plaintiffs Rodney Kilgore, William Kilgore, and nonparty Barnes scheduled a meeting with officers from the Tennessee Highway Patrol in July 2013.[4] Present at this meeting were Defendants Brooks, Major Cheryl Sanders, and Lieutenant Colonel Hurley. Defendants Sanders and Hurley are Defendants Hunter's and Brooks' superiors in the Tennessee Highway Patrol chain of command. Plaintiffs informed Defendants of Hunter's alleged sexual advances towards Adair, and Defendants Hurley and Sanders "promised to contact Ms. Adair to investigate into the matter." (*Id.* at 5). An official investigation, however, was never conducted, and Defendants Hunter and Brooks remained in charge of inspections in Plaintiffs' geographic region.

Shortly after this meeting, Sonny's and MTC were re-inspected by Lieutenants Jeff Mosley and John Harmon.[5] Both companies passed this inspection and were re-

---

**3.** The owners of Sonny's and MTC are related to Adair's employer, Plaintiff Rodney Kilgore.

**4.** Defendants believe it significant that Plaintiff Adair was not present at this meeting and that she never personally complained about Hunter's conduct to officials at the Tennessee Highway Patrol. (Doc. 12 at 15). The Court,

however, finds these details immaterial. *See infra* Part III.A.2.

**5.** The record is unclear as to why the re-inspection was not performed by Defendant Hunter.

instated to the Rotation List in August 2013. (*Id.*). This reinstatement, however, was short-lived. "Despite the meeting," Plaintiffs allege that they were "continually harassed by members of the Tennessee Highway Patrol, including Defendants Hunter and Brooks." (*Id.*). Although Plaintiffs claim that they were at all times in compliance with the State's rules and regulations, Sonny's, MTC, and MWS all received certified letters on November 7, 2013 informing them that they were being removed from the Rotation List. (*Id.* at 5–6). Plaintiffs contend that the companies' removal from the Rotation List was actually motivated by Adair's "refusal to capitulate to Defendant Hunter's unwelcome sexual advances." (*Id.* at 6). Plaintiffs subsequently brought suit, claiming that Defendants' actions violated the Fourteenth Amendment Equal Protection Clause and the Tennessee Human Rights Act as to Plaintiff Adair, and the Fourteenth Amendment Due Process and Equal Protection Clauses, the First Amendment, and the Tennessee Human Rights Act as to the remaining Plaintiffs. (Doc. 1 at 6–9).

Defendants filed their original Motion for Partial Dismissal (Doc. 11) on April 11, 2016, and their Amended Motion for Partial Dismissal (Doc. 40) on July 7, 2016. Therein, Defendants seek to dismiss: (1) Plaintiff Adair's federal constitutional claims; (2) Plaintiffs Rodney Kilgore's, William Kilgore's, MWS's, and Sonny's (collectively, the "Wrecker Service Plaintiffs") Substantive Due Process claim; (3) all claims against Defendants Hurley and Sanders; and (4) all claims under the Tennessee Human Rights Act.[6] (Doc. 40 at 1–2). Furthermore, Defendants argue that even if Plaintiffs' claims survive their Mo-

tion for Partial Dismissal, Defendants are entitled to qualified immunity as to Plaintiffs' claims under the Tennessee Human Rights Act, the Fourteenth Amendment's Equal Protection Clause, and for supervisory liability. (*Id.* at 2). Plaintiffs filed a Response, (Docs. 22, 23), and supplemental briefing on the qualified immunity issue, (Doc. 29), and Defendants filed a reply. (Doc. 30). This matter is now ripe for review.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide, in relevant part, that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). While Rule 8(a) does not require plaintiffs to set forth detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). At a minimum, Rule 8(a) requires the plaintiff to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests"—that is, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 555 n.3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is thus not a challenge to the plaintiff's factual allegations, but rather, a "test of the plaintiff's cause of action as stated in the complaint." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010).

"[O]nly a complaint that states a plausible claim for relief survives a motion to

---

**6.** Defendants also sought to dismiss all claims against Defendants in their official capacities, as well as Plaintiffs' request for injunctive and declaratory relief. Because Plaintiffs expressly abandoned these claims in their Response, (Doc. 23 at 1–2, 19), they are hereby **DISMISSED**.

dismiss." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). The reviewing court must determine not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937; *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955 (holding that a complaint is subject to dismissal where plaintiffs failed to "nudg[e] their claims across the line from conceivable to plausible"). Although the Court must take all of the factual allegations in the complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a plaintiff's legal conclusions couched as factual allegations need not be accepted as true. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *see Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010). Therefore, to survive a motion to dismiss under Rule 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

## III. ANALYSIS

Defendants seek dismissal of several claims in Plaintiffs' Complaint. The Court will discuss each claim in turn, differentiating by Plaintiff where necessary.

### A. Plaintiff Adair's Federal Claims

#### 1. Equal Protection Claim against Defendant Hunter

Plaintiff Adair claims that Defendant Hunter's alleged sexual harassment amounts to intentional gender discrimination, and thus violates her rights under the Fourteenth Amendment's Equal Protection Clause. Defendant Hunter argues that the Equal Protection clause does not apply to Plaintiff Adair's charges of sexual harassment. In the alternative, he asserts that he is entitled to qualified immunity.

█ Defendant Hunter believes that Plaintiff Adair's Fourteenth Amendment claim should be dismissed because "[b]y its very terms, the Equal Protection Clause only applies to an unequal protection of the 'laws.'" (Doc. 12 at 10). Specifically, he claims that the Equal Protection Clause only applies to "(1) laws that are discriminatory, or (2) discriminatory application or enforcement of the laws," and "does not promote 'equality' in all respects—just equality in the laws and in the enforcement of the laws." (*Id.* at 10–11). This argument, however, is based on an unduly narrow interpretation of the Equal Protection Clause and is legally indefensible. Indeed, courts, including the Supreme Court of the United States, have held *for decades* that sexual harassment is a form of gender discrimination proscribed by the Equal Protection Clause. *See, e.g., Fitzgerald v. Barnstable Sch. Comm.,* 555 U.S. 246, 258, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009) ("Accordingly, we hold that § 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination [*i.e.,* failure to adequately respond to peer-on-peer sexual harassment] in schools."); *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988) ("Appellants argue that, at the time of the challenged conduct, sexual harassment was not a violation of the equal protection clause of

the fourteenth amendment, and, moreover, supervisory officials could not be held liable for harassment committed by subordinates. *Although we disagree with this assessment of the law,* we conclude [for other reasons] that Poe's § 1983 sexual harassment claims here must fail.") (emphasis added); *Estate of Scott by Scott v. deLeon,* 603 F.Supp. 1328, 1332 (E.D. Mich. 1985) ("I have little difficulty concluding from these principles that it was clearly established that sexual harassment could violate the rights protected by the equal protection clause."). Because "it is axiomatic that the Equal Protection Clause applies to more than statutory schemes," the Court rejects Defendant Hunter's wooden interpretation thereof. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1229 (6th Cir. 1997).

Equally misguided is Defendant Hunter's argument that "it is well settled that verbal harassment is not a constitutional claim." (Doc. 12 at 11). In support, Defendant Hunter cites to several cases from the Sixth Circuit and district courts within the Sixth Circuit. Those cases, however, stand for the proposition that *isolated incidents* of verbal harassment do not rise to the level of constitutional violations. Those same cases provide that where, as here, a plaintiff alleges ongoing harassment, the equal protection clause applies. *See, e.g., Taylor v. City of Falmouth,* 187 Fed.Appx. 596, 601 (6th Cir. 2006) ("[A]n officer's use of a racial epithet, *without harassment or some other conduct that deprives the victim of established rights,* does not amount to an equal protection violation.") (emphasis added) (quoting *Williams v. Bramer,* 180 F.3d 699, 706 (5th Cir. 1999)); *Ellis v. Ficano,* 1995 WL 764127 at *14, 73 F.3d 361 (6th Cir. Dec. 27, 1995) ("Even if Delduco, Walker and Elsey made those comments, *isolated threats and verbal abuse* are not violations of constitutional magnitude.") (emphasis added); *Harlan v. Hol-*

*land,* 2013 WL 6668734 at *4 (E.D. Tenn. Dec. 18, 2013) ("Use of insulting racial epithets accompanied by 'harassment or a violation of established rights may amount to a separate equal protection claim.'") (quoting *Williams v. Kaufman Cnty.,* 352 F.3d 994, 1013 (5th Cir. 2003)). Accordingly, Defendant Hunter's argument that the Equal Protection Clause does not apply to Plaintiff Adair's claims is without merit.

Having disposed of Defendant Hunter's preliminary arguments, the Court now turns to Defendant Hunter's qualified immunity defense. The issue of qualified immunity is a legal question for the Court to resolve. *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir. 2009). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Jones v. Muskegon Cnty.,* 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks omitted). As the Sixth Circuit has explained:

Qualified immunity exists to "acknowledge that reasonable mistakes can be made as to the legal constraints on particular ... conduct." [*Everson,* 556 F.3d at 494] (citation omitted). "The doctrine protects all but the plainly incompetent or those who knowingly violate the law." *Id.* To that end, [a court asks] two questions to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id.* ... [A court is] free to address these questions in any sequence." *Pearson v. Callahan,* 555 U.S.

223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

*Pritchard v. Hamilton Twp. Bd. of Trs.*, 424 Fed.Appx. 492, 498 (6th Cir. 2011). After a defendant raises qualified immunity as an affirmative defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to immunity. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005); *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

Aside from the arguments rejected above, Defendant Hunter does not argue that the facts alleged in Plaintiff Adair's Complaint do not amount to a constitutional violation. Rather, Defendant Hunter claims that "[t]here is no clearly established right that was allegedly violated." (Doc. 12 at 12). To determine whether Plaintiff Adair's right to be free from sexual harassment by a state actor was "clearly established" in February of 2013, the Court must first look to binding precedent from the Supreme Court, then to the Sixth Circuit, then to other courts within the Sixth Circuit. *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991). In some cases, the Court may look to decisions of other courts for guidance. *Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988).

> For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Id.* Moreover, the Supreme Court has warned lower courts to avoid defining a right in overly abstract or particularized terms:

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified ... It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted).

As articulated, *supra*, courts have long held that the Equal Protection Clause applies to claims of sexual harassment. In direct contravention of Supreme Court guidance, however, Defendant Hunter defines the right at issue in a highly particularized manner. Specifically, he claims that "[t]here are no cases which establish that it is a constitutional violation for a law enforcement officer to make the occasional sexual comment [7] to a person who is not a fellow employee or supervisee, even if that person allegedly has to communicate with the law enforcement officer." [8] (Doc. 12 at 12).

---

7. It is worth noting that Plaintiffs' Complaint (Doc. 1) characterizes the alleged harassment as much more persistent and severe than "the occasional sexual comment." At this stage in the litigation, the Court must accept as true

all of the factual allegations in the Complaint. *See supra* Part II.

8. As will be made clear *infra*, Defendants' assertion that "[t]here are no Equal Protec-

While it is true that neither the Supreme Court nor the Sixth Circuit has found a constitutional violation in such a particularized scenario, this Court finds that the arc of Sixth Circuit precedent, coupled with out-of-circuit precedent, dictates that in 2013, no reasonable officer in Defendant Hunter's position could have believed that his alleged actions did not run afoul of the Equal Protection Clause. First, the Court notes that the Sixth Circuit and district courts within the circuit have on many occasions held that sexual harassment of a government employee by another government employee violates the Equal Protection Clause. *See, e.g., Hickman v. Laskodi,* 45 Fed.Appx. 451, 455–56 (6th Cir. 2002) ("Laskodi allegedly threatened Hickman on May 14, 1999. This court had made clear long before that date that sexual harassment by a government official violates the Equal Protection Clause."); *Poe,* 853 F.2d at 432 ("Here, as we have shown, there is no doubt that the right to be free from sex discrimination is protected by the equal protection clause of the fourteenth amendment."); *Estate of Scott,* 603 F.Supp. at 1332 ("I have little difficulty concluding from these principles that it was clearly established that sexual harassment could violate the rights protected by the equal protection clause."). Moreover, a district court within the Sixth Circuit has explicitly extended this rationale to sexual harassment of an independent contractor by a government employee. *Ebelt v. Cnty. of Ogemaw,* 231 F.Supp.2d 563, 570 (E.D. Mich. 2002) ("The Equal Protection Clause protects independent contractors from a public official's attempts to extract sexual favors or sexually harass them in exchange for awarding or not interfering with an existing government contract."). The Court

finds that this line of cases alone is enough to make it sufficiently clear to a reasonable officer in Defendant Hunter's position that the Equal Protection Clause prohibits him from sexually harassing *any* individual, whether he/she be a state employee or a civilian.

Even if these cases were not enough to establish that Defendant Hunter's alleged conduct violated a clearly established right, these facts present an extraordinary case in which decisions of courts in other circuits may serve as grounds for finding that the law in question was clearly established. Most saliently, the United States Court of Appeals for the Tenth Circuit addressed a factually indistinguishable scenario in *Johnson v. Martin,* 195 F.3d 1208 (10th Cir. 1999). Therein, several nonemployee citizens of Muskogee, Oklahoma brought suit against James Martin, the city's Director of the Building Codes and Enforcement Department. Plaintiffs alleged that "Martin violated their rights under the Equal Protection Clause of the Fourteenth Amendment by sexually harassing them over an extended period of time." *Id.* at 1210. Like Plaintiff Adair, none of the plaintiffs were city or state employees, and all were sexually harassed by a state actor while he was performing his official duties. Like Defendant Hunter, Martin argued that at the time he allegedly sexually harassed the plaintiffs, it was not clearly established that the Equal Protection Clause's ban on sexual harassment extended beyond the employment setting. *Id.* at 1216–17.

The Tenth Circuit recognized that its case law at the time dealt exclusively with the harassment of state employees, but ultimately held that

> [e]ven though *Starrett, Woodward, Noland,* and *David* all involve alleged sexu-

tion cases involving alleged harassment by a government employee against a non-govern-

ment employee," (Doc. 30 at 7), is unquestionably false.

al harassment in an employment setting, we are not convinced that, prior to *Whitney*, the law was unclear as to whether a public employee could be held liable for using governmental authority to sexually harass a nonemployee. There is no indication in those decisions that a public official's abuse of governmental authority in furtherance of sexual harassment in the employment setting is fundamentally different than when the abuse of authority occurs outside the workplace. That conclusion is supported by the approach we adopted in *Whitney*-the case that the defendants characterize as breaking new ground by extending § 1983 to sexual harassment claims brought by nonemployees ...

We therefore conclude that, during the period of time that Mr. Martin allegedly engaged in the acts of sexual harassment, a public official's reasonable application of the prevailing law would lead him to conclude that to abuse any one of a number of kinds of authority for purpose of one's own sexual gratification ... would violate the Equal Protection Clause. As a result, the defendants are not entitled to qualified immunity on the grounds that the law regarding sexual harassment of nonemployees was not clearly established during the period from October 1994 to January 1996.

*Id.* at 1217–18 (citations omitted). Like the court in *Johnson*, this Court finds the distinction between harassment inside the workplace and outside the workplace immaterial.

Moreover, several other Circuit Courts of Appeal have found the Equal Protection Clause to protect nonemployees from sexual harassment. *Locke v. Haessig*, 788 F.3d 662, 667 (7th Cir. 2015) (finding that in 2008 it was clearly established that a parolee had a cognizable claim under the Fourteenth Amendment for sexual harassment by a parole officer); *Hayut v. State Univ. of New York*, 352 F.3d 733, 743–49 (2d Cir. 2003) (finding that fact questions precluded summary judgment on a student's claim that her professor violated her rights under the Equal Protection Clause by sexually harassing her); *Murray v. City of Onawa, Iowa*, 323 F.3d 616, 617–18 (8th Cir. 2003) (discussing attorney's fees in a successful § 1983 action in which a jury found that the city violated a civilian's constitutional rights by failing to protect her from a police officer's sexual harassment); *R.–S.—by Kate S. v. McCaffrey*, 143 F.3d 473, 476 (9th Cir. 1997) (finding that school officials were not entitled to qualified immunity because "[w]ell prior to 1988 the protection afforded under the Equal Protection Clause was held to proscribe any purposeful discrimination by state actors, be it in the workplace *or elsewhere*, directed at an individual solely because of the individual's membership in a protected class.") (emphasis in original) (quoting *Lindsey v. Shalmy*, 29 F.3d 1382, 1386 (9th Cir. 1994)); *Whitney v. State of New Mexico*, 113 F.3d 1170, 1174–75 (10th Cir. 1997) (finding that a daycare operator properly stated a claim under the Equal Protection Clause for sexual harassment by a state employee charged with inspecting daycare facilities). These cases "point unmistakably to the unconstitutionality of the conduct complained of," and are "so clearly foreshadowed by applicable direct authority" that they should leave no doubt in the mind of a reasonable officer in Defendant Hunter's position that the alleged conduct violated the Equal Protection Clause. *Seiter*, 858 F.2d at 1177. Accordingly, and independently of the Sixth Circuit precedent discussed above, out-of-circuit case law shows that the applicable law in this case was clearly established in 2013.

Because the conduct alleged, if proven, would amount to a violation of the Equal Protection Clause, and because the right to

be free from sexual harassment by a state actor was clearly established in 2013, Defendant Hunter is not entitled to qualified immunity. Accordingly, his Motion to Dismiss Plaintiff Adair's constitutional claims will be **DENIED**.

### 2. Equal Protection Claim Against Defendants Brooks, Sanders, and Hurley

▋ Plaintiff Adair next claims that Defendants Brooks, Sanders, and Hurley are all liable for Defendant Hunter's alleged sexual harassment under a theory of supervisory liability. Specifically, Plaintiff alleges that Defendant Brooks is Defendant Hunter's direct supervisor and that he removed Sonny's and MTC from the Rotation List. (Doc. 1 at 3–4). Moreover, Plaintiff claims that Defendants Brooks, Sanders, and Hurley were all present at a July 2013 meeting at which William Kilgore, Danny Barnes, and Rodney Kilgore informed Defendants of Defendant Hunter's alleged conduct. (*Id.* at 4–5). Instead of intervening, however, Defendants allegedly failed to conduct an investigation into Defendant Hunter's conduct (despite allegedly promising they would do so) or otherwise act to prevent future sexual harassment. (*Id.*).

It is well-established that Plaintiff Adair cannot rely on a theory of *respondeat superior* to establish supervisory liability. Instead, "the defendants must be shown to have encouraged the violation of the plaintiffs' rights 'or in some other way directly participated in it. At a minimum,' the defendants must have 'implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Lynn v. City of Detroit*, 98 Fed. Appx. 381, 385 (6th Cir. 2004) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Furthermore, such conduct must amount to deliberate indifference to Plaintiff's constitutional rights. *Doe ex rel.*

*Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002). "Put another way ... the plaintiff must show that the 'defendants' conduct amounted to a tacit authorization of the abuse.'" *Id.* (quoting *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 513 (6th Cir. 1996)).

Defendants present three cursory arguments in favor of dismissing Plaintiff Adair's supervisory liability claims. First, Defendants argue that Plaintiff Adair herself was not present at the July 2013 meeting and that she never personally complained to state officials of the alleged sexual harassment. (*See, e.g.*, Doc. 30 at 11). Defendants, however, have identified no authority, and the Court has found none, that requires the alleged victim to report sexual harassment directly to the State for supervisory liability to attach. To the contrary, the relevant inquiry is whether Defendants, in their supervisory capacities, "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee*, 199 F.3d at 300.

Second, Defendants argue that "[a] claim that a supervisor did 'nothing' in response to a claim of past behavior does not state a claim for relief," and that "[t]here are no allegations that Defendants ... implicitly authorized, approved or acquiesced in any of the conduct ...." (Doc. 30 at 10–11). This argument, however, ignores both the factual allegations in the Complaint, as well as the definition of the term "acquiesce." As outlined above, Plaintiff Adair has alleged that Defendants Brooks, Sanders, and Hurley were all aware that Defendant Hunter was allegedly sexually harassing Plaintiff Adair. Moreover, Defendants allegedly promised to investigate the matter, but never followed through. Defendants thus knowingly and deliberately permitted Defendant Hunter's sexual harassment of Plaintiff Adair to

continue. Notwithstanding Defendants' protestations to the contrary, this is a textbook example of acquiescence to unconstitutional conduct. Accepting her allegations in the Complaint as true, as it must, the Court finds that Plaintiff Adair has properly alleged deliberate indifference to unconstitutional conduct such that supervisory liability may attach. *Cf. Claiborne Cnty*, 103 F.3d at 513 (finding that supervisory defendants had not knowingly acquiesced in unconstitutional conduct because "[t]hey had *no knowledge*, constructive or otherwise, that Davis was abusing Doe.") (emphasis added).

Finally, Defendants argue that they are entitled to qualified immunity because "Plaintiffs have cited to no case law to suggest that Defendants ... were obligated to remove Defendants Hunter or Brooks from their positions over the wrecker services." (Doc. 30 at 11). Again, however, Defendants define the issue in too particularized a manner. *See Creighton*, 483 U.S. at 639–40, 107 S.Ct. 3034. The relevant question is not whether it was clearly established that Defendants were required to remove an alleged sexual harasser from his position, but rather is whether Defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Defendant Hunter. *Shehee*, 199 F.3d at 300; *see also Peatross v. City of Memphis*, 818 F.3d 233, 243–44 (6th Cir. 2016). Because Plaintiff Adair has adequately alleged such conduct, Defendants are not entitled to qualified immunity. Accordingly, their Motion to Dismiss Plaintiff Adair's claim for supervisory liability will be **DENIED**.

## B. Wrecker Service Plaintiffs' Substantive Due Process Claim

■ The Wrecker Service Plaintiffs argue that Defendant Hunter's alleged sexual harassment of Plaintiff Adair and their ensuing removal from the Rotation List amounts to a violation of: (1) the Fourteenth Amendment Procedural Due Process Clause; (2) the Fourteenth Amendment Substantive Due Process Clause; (3) the Fourteenth Amendment Equal Protection Clause; and (4) the First Amendment. (Doc. 1 at 7–8). Defendants argue that the Wrecker Service Plaintiffs' Substantive Due Process claim is subsumed by their other federal claims and should therefore be dismissed. (Doc. 12 at 12–13).

■ It is well-established that where the United States Constitution provides explicit protection against certain government actions, a plaintiff should pursue his claims under that specific provision rather than under the Substantive Due Process Clause. In the seminal case on this subject, the Supreme Court held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The Sixth Circuit has repeatedly echoed this principle. *See, e.g., Davis v. Butler Cnty., Ohio*, 658 Fed. Appx. 208, 216 (6th Cir. 2016) ("As indicated above, it is the Fourth Amendment that governs the unlawful search and seizure claims set forth in Davis' complaint. Thus, her attempt to link her eighth cause of action to the more scarce and open-ended guideposts of the [Substantive Due Process Clause] is unpersuasive.") (internal quotation marks and citations omitted). Here, it is undisputed that the conduct about which the Wrecker Service Plaintiffs complain is also alleged to violate of the Fourteenth Amendment's Procedural Due

Process and Equal Protection Clauses and the First Amendment. Indeed, all of these claims fall under the same paragraph of Plaintiffs' Complaint. (Doc. 1 at 7–8). These provisions, and not the Substantive Due Process Clause, must guide the Court's analysis. *Albright*, 510 U.S. at 273, 114 S.Ct. 807. Accordingly, the Wrecker Service Plaintiffs' Substantive Due Process claim must be **DISMISSED**.

The cases to which the Wrecker Service Plaintiffs cite for the proposition that their Substantive Due Process claim must move forward do not dictate the opposite result. (Doc. 23 at 17). All but one of those cases were decided before *Albright*, and are therefore not instructive. *See Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992); *Abercrombie v. City of Catoosa, Oklahoma*, 896 F.2d 1228 (10th Cir. 1990); *Cowan v. Corley*, 814 F.2d 223 (5th Cir. 1987); *Crownhart v. Thorp*, 1992 WL 332298 (N.D. Ill. Nov. 9, 1992); *Gregg v. Lawson*, 732 F.Supp. 849 (E.D. Tenn. 1989). Moreover, while all of the cases either discuss a Procedural Due Process claim or the existence of the plaintiff's property right, none of them analyze whether a Substantive Due Process claim may progress in the face of a claim under a more specific constitutional provision. *Pritchett*, 973 F.2d at 316–18 (analyzing a Procedural Due Process Claim); *Abercrombie*, 896 F.2d at 1231–33 (finding that the plaintiff had a protected property interest and analyzing his 42 U.S.C. § 1983 claim under the First

Amendment); *Cowan*, 814 F.2d at 227–28 (finding that the plaintiff had a protected property interest and remanding to the district court for further consideration of the plaintiff's due process claim); *Pruitt v. City of Clinton*, 2010 WL 3009513 at *7–9 (E.D. Tenn. July 28, 2010) (analyzing Procedural Due Process and Equal Protection claims); *Crownhart*, 1992 WL 332298 at *2 (analyzing a Procedural Due Process claim); *Gregg*, 732 F.Supp. at 854–856 (analyzing Procedural Due Process and Equal Protection claims).

Because the Wrecker Service Plaintiffs' Substantive Due Process claims are governed by the Procedural Due Process Clause, the Equal Protection Clause, and the First Amendment, Defendants' Motion to Dismiss the Substantive Due Process claim will be **GRANTED**.[9]

## C. All Plaintiffs' State Law Claims

 Finally, Defendants argue that all Plaintiffs' Tennessee Human Rights Act ("THRA") claims should be dismissed because the THRA does not apply to the present scenario. (Doc. 12 at 7–10). In the alternative, Defendants argue that they are entitled to qualified immunity because there was no clearly established law regarding the illegality of the alleged conduct under the THRA. (Doc. 30 at 2–6). Because their allegations do not describe a THRA violation as a matter of law, Plaintiffs' state law claims must be dismissed.[10]

---

**9.** The Wrecker Service Plaintiffs claim in their Complaint that the Plaintiffs' actions "[v]iolated their substantive due process rights in violation of the Fourteenth Amendment to the United States Constitution," and that Defendants "[e]ngaged in conduct that was arbitrary, capricious, and shocking to the conscience in violation of the Fourteenth Amendment to the United States Constitution." (Doc. 1 at 7). The Court's analysis in Part III.B applies to both claims, as they both

arise under the Substantive Due Process Clause.

**10.** While the Parties agree that qualified immunity is an available defense to THRA claims, there are conflicting authorities on this point. *See, e.g., Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991) ("Gossman's state law claims are not used to establish any violation of federal law. Instead, Gossman seeks the damages expressly provided by the 'whistleblower' law. Since Gossman's state

Plaintiffs correctly argue that the THRA applies to allegations of sexual harassment. *See, e.g., Sanders v. Lanier,* 968 S.W.2d 787, 789–90 (Tenn. 1998). Again, however, this is not the relevant inquiry. Defendants claim that the THRA is inapplicable to the facts presented here because it only prohibits discrimination in housing, public accommodations, and employment. (Doc. 12 at 7). Plaintiffs concede that the facts alleged do not implicate housing or public accommodations, but argue that Defendants' alleged actions amount to employment discrimination. (Doc. 23 at 5–7). Notwithstanding Plaintiffs' protestation to the contrary, claims of discrimination under the TRHA in the employment context require an employer-employee relationship. In *Sanders,* the Supreme Court of Tennessee originally held that

> [t]he THRA prohibits an employer from discriminating against a person or an individual. "Employer" is defined as including "the state, or any political or civil subdivision thereof, ... or any person acting as an agent of an employer, directly or indirectly." A "person" is defined as including "one (1) or more individuals." *By these terms, the definition does not require that the person or individual be an employee of the employer.*

968 S.W.2d at 790 (emphasis added) (citations omitted) (quoting Tenn. Code Ann. § 4–21–102).

Several years later, however, the Supreme Court of Tennessee reversed course in *Bredesen v. Tennessee Judicial Selection Commission,* 214 S.W.3d 419 (Tenn. 2007). Therein, the court considered

"whether a nominee or applicant to fill a judicial vacancy is an 'employee' *for purposes of the THRA*." *Id.* at 430 (emphasis in original). First, the court noted that the THRA is interpreted consistently with Title VII of the Civil Rights Act of 1964, which "defines 'employee' as 'an individual employed by an employer.'" *Id.* (quoting 42 U.S.C. § 2000e(f)). It went on to analyze the plaintiffs' THRA claims using Title VII jurisprudence, finding that "the question of whether an individual is an employee ... is resolved by applying common law principles of agency." *Id.* After applying these principles, the court ultimately found that "state court judges (and hence nominees to fill a judicial vacancy) are not employees for purposes of the THRA ... Accordingly, we affirm the trial court's ruling that the THRA does not apply to this proceeding." *Id.* at 432. While not explicitly overruling *Sanders,* it is clear that the Supreme Court of Tennessee has repudiated its prior holding and now requires that there be an employer-employee relationship in order for the THRA to provide the relief Plaintiffs seek.

Looking to the facts of the present case, it is clear that there is no employer-employee relationship between Plaintiffs and Defendants. Defendants are employees of the Tennessee Highway Patrol, and Plaintiff Adair is an employee of two privately owned towing companies. Plaintiffs do not allege, nor could they, that Defendants "control the manner and means by which" Plaintiff Adair performs the day-to-day functions of her job. *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811

law claims for damages do not invoke any federal law whatsoever, qualified immunity is not an available defense. We therefor affirm the district court's denial of the defendants' qualified immunity defense to Gossman's state law claims.") (citing *Andreu v. Sapp,* 919 F.2d 637, 640 (11th Cir. 1990) ("Qualified

immunity is a defense to federal causes of action and does not protect officials from claims based on state law.")). The Court need not discuss this issue any further, however, because Plaintiffs' claims fail as a matter of law and will be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

(1989). They also cannot show (1) that Defendants dictate where, when, or for how long she performs her duties; (2) that Defendants have the right to assign additional projects to her; (3) that Defendants control her pay; (4) that Defendants provide her employee benefits; or (5) that Defendants dictate how her privately-paid salary is taxed. *Id.* at 751–52, 109 S.Ct. 2166 (discussing factors relevant to the inquiry of whether a party is an employee under the common law). Common law agency principle dictate, therefore, that no employer-employee relationship exists between the Parties, and the THRA is thus inapplicable. *See Bredesen,* 214 S.W.3d at 432.

Plaintiffs recognize that Plaintiff Adair "was not directly an employee of Defendants Hunter and Brooks," (Doc. 23 at 5), but attempt to avoid the consequences of this conclusion with a strained argument that she was Defendants' de-facto employee. Specifically, they argue that

> Ms. Adair was and is forced to be in contact with Defendant Hunter by virtue of her employment, and aid in the facilitation of her employers' compliance with state rules and regulations concerning wrecker services and/or the state's rotation list … Ms. Adair's job necessitates that she regularly come into contact with Defendant Hunter, who is responsible for overseeing the district in which the Plaintiff's [sic] wrecker services are located. It is hardly a stretch of the imagination, then, to infer that Ms. Adair performs her jobs in a manner

dictated by State rules and regulations and, consequently, in a manner subject to Defendant's authority, approval, and discretion.

(Doc. 23 at 5–6). The Court, however, finds that it requires quite a stretch of the imagination to infer that Plaintiff Adair is Defendants' employee merely because her job requires her to interact with a state agent in charge of enforcing state regulations. Plaintiffs have cited no authority for such a proposition, and the Court has found none. Moreover, accepting such a strained view of the employer-employee relationship would lead to absurd results. If the Court were to accept Plaintiffs' viewpoint, then the employees of *any regulated business* would be considered de-facto state employees who could invoke the protections of the THRA against state inspectors. Surely if the Tennessee legislature intended to expose the State to such vast liability it would have done so explicitly.

Because Plaintiffs have failed to establish that they are Defendants' employees, "the THRA does not apply to this proceeding." *Bredesen,* 214 S.W.3d at 432. Accordingly, Defendants' Motion to Dismiss Plaintiffs' THRA claims will be **GRANTED**.[11]

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss (Doc. 40) is hereby **GRANTED in part** to the extent it seeks dismissal of

---

11. The Court need not discuss in detail the Wrecker Service Plaintiffs' relationship with Defendants because their THRA claim is largely based on Defendants' alleged retaliation against them for voicing opposition to Defendant Hunter's alleged sexual harassment of Plaintiff Adair. (Doc. 23 at 8–10). Since the alleged sexual harassment does not amount to a THRA violation as a matter of law, the Wrecker Service Plaintiffs cannot

recover on a theory of retaliation: To the extent that the Wrecker Service Plaintiffs argue that Defendants are liable under the THRA's accomplice liability theory, (*see* Doc. 23 at 9), these claims are foreclosed because the Wrecker Service Plaintiffs, like Plaintiff Adair, have failed to show that they were Defendants' employees for purposes of the THRA.

- Plaintiffs' claims against all Defendants in their official capacities;
- Plaintiffs' request for injunctive and declaratory relief;
- Plaintiffs' claims under the Tennessee Human Rights Act; and
- The Wrecker Service Plaintiffs' Substantive Due Process claim,

and **DENIED in part** to the extent it seeks dismissal of Plaintiff Adair's federal constitutional claims.